WINGERT v. PRESIDENT DIRECTORS AND COMPANY OF HAGERSTOWN BANK et al. (four cases).

HAGERSTOWN SILK CO. v. SAME.

ANTIETAM KNITTING CO. v. SAME.

Nos. 2942–2947.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1930.

See, also, 27 F.(2d) 520.

John M. Lyell, of Baltimore, Md., and Miller Wingert, of Hagerstown, Md., for appellants.

Alexander Armstrong, of Baltimore, Md., and Robert H. McCauley, of Hagerstown, Md. (Edward Oswald, Jr., of Hagerstown, Md., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

PARKER, Circuit Judge.

These are appeals in six cases in which William Wingert, Miller Wingert, Lewis P. Wingert, Martha A. Wingert, the Hagerstown Silk Company, and the Antietam Knitting Company were adjudged bankrupts in the court below. As the cases grow out of the same facts, they will be considered together. On October 18, 1927, involuntary petitions in bankruptcy were filed against each of the persons named, and also against Henry F. Wingert, the act of bankruptcy alleged in each case being that the respondent, while insolvent, suffered and permitted judgments to be obtained against him, which constituted liens upon his property, and failed within the time prescribed by statute to have same vacated or discharged. Each of the respondents admitted that the judgments had been obtained and not vacated or discharged, but denied insolvency; and the individual respondents denied also that they were not engaged chiefly in farming or the tillage of the soil.

On motion of respondents the cases were referred to a special master, who, after hearing a great volume of testimony in each case, reported same to the court with his findings of fact and conclusions of law thereon. He found that each of the respondents was insolvent, and that none of the individual respondents was engaged chiefly in farming. In each case the report of the special master was confirmed by the court, and each respondent was adjudged bankrupt. All have appealed from the adjudications of bankruptcy, and the only points presented by the appeals are the correctness of the holdings as to insolvency and as to the individual defendants not occupying the status of farmers. Henry F. Wingert has died in the meantime, and the appeal in his case has not yet been brought up, but counsel have admitted at the bar of this court that the special master made certain findings as to his assets and liabilities, which were approved by the court.

The individual respondents live near Hagerstown, Md. They own, as tenants in common with another sister, valuable real estate which they have inherited from their parents. The respondent William Wingert owns all, or practically all, of the stock of the Hagerstown Silk Company, and the stock of the Antietam Knitting Company is owned by him and other members of the family The silk company sustained heavy losses in the year 1920, and from that time on its affairs were in a very unsatisfactory condition. The knitting company suffered losses also, and the affairs of the Wingert family became much involved in an effort to finance these corporations and keep them going. Paper of the corporations in large amounts was indorsed by the individual respondents, and trade acceptances with their indorsements were discounted. These acceptances, as a result of the bankruptcy of the acceptors, have become an unsecured liability. In addition to this, the individual respondents have borrowed in their own names large amounts, which seem to have been lost in the business.

It is out of the question to set forth even the substance of the testimony which was taken before the Special Master and which related to hundreds of items of assets and liabilities of the respondents. It is sufficient to say that he went into all of these matters very fully, heard the evidence offered by both sides, which was conflicting in many particulars, and found the facts after having had the advantage of personally seeing and hearing the witnesses and examining the books and other documents produced. His findings were approved and adopted by the District Judge; and the rule is well settled that in such case we will not disturb them unless they are clearly wrong. Davis v. Schwartz, 155 U. S. 631, 636, 15 S. Ct. 237, 39 L. Ed. 289; In re Cannon (C. C. A. 7th) 31 F.(2d) 388; Carstens v. McLean (C. C. A. 9th) 7 F.(2d) 322. We have examined the records in all of the cases carefully; and, with the exception to which we shall advert hereafter and which does not alter the result, we see no reason for questioning any of them.

■ The special master found, as to the Hagerstown Silk Company, that its assets were $97,250 and its liabilities $657,014.73; and, as to the Antietam Knitting Company, that its assets were $54,087.21 and its liabilities $113,214.85. There can be no question, therefore, as to the insolvency of both of these corporations. It is contended that they are not insolvent because a large part of their obligations are indorsed by the individual respondents, who, it is argued, are solvent; but, aside from the fact that we think that the individual respondents were correctly held to be insolvent also, it is clear that liabilities do not cease to be liabilities merely because represented by paper which is indorsed. Not only do the holders of such indorsed paper have the right to prove it against the maker, but the indorsers also have the right to have it proved for their benefit. The point is so clearly lacking in merit as not to warrant further discussion.

Coming to the individual respondents, the special master found that the assets of William Wingert were $175,105 and his liabilities $540,180.56, of which $477,510.73 was represented by paper on which he was indorser or comaker. The assets of Miller Wingert were $113,758 and his liabilities $695,038.05, of which $662,968.16 was represented by paper on which he was indorser or comaker. The assets of Lewis P. Wingert were $107,633 and his liabilities $220,479.96, of which $215,347.83 was represented by paper on which he was indorser or comaker. And the assets of Martha A. Wingert were $104,758 and her liabilities $437,574, of which $425,118.59 was represented by paper which she had indorsed or executed as comaker.

■■ It is true that the liability of the several respondents on the paper indorsed or executed as comaker is not separate and distinct from that of the other respondents. On the contrary, the same instruments have been either executed or indorsed by a number of them, and these go to swell the liabilities of each indorser. Miller Wingert, whose liabilities of this character amount to $662,-968.16, seems to have put his name on practically all of them. Respondents contend that in this situation the indorsement should not be estimated as a liability for the full face of the paper as to each indorser, but that account should be taken of the fact that others are liable thereon. We think that this is correct. In passing upon the solvency of one of a number of makers or indorsers of paper, it is manifestly unfair to count the full amount of the paper as a liability

against him, without counting as an asset his right of contribution against his comakers or coindorsers. Remington on Bankruptcy (3d Ed.) § 1771. It is true that where, as here, the comakers or coindorsers are not solvent, the right of contribution should not be estimated as an asset at its face value; but this does not mean that it should be entirely ignored.

■ We do not think, however, that the point has any practical significance under the facts in these cases; for it is clear that, even if the rights of contribution be worked out among the several comakers and indorsers, it will not result in making any of the respondents solvent, as the combined assets of all of the respondents is less than their total liabilities even when all duplication is eliminated. It is said, however, that the individual respondents are not liable for the debts of the corporations or for the debts of each other, except to the extent that they have indorsed, and that they are entitled to contribution from Henry F. Wingert on the papers signed by him, and that his assets should be considered in passing upon the question of their solvency. But even this will not help respondents. The total assets of all of the individual respondents, including the assets of Henry F. Wingert, as found by the special master, is only $646,655, whereas their liabilities are not less than $819,229.42, the latter amount being arrived at by adding together the individual debts of the respondents and Henry F. Wingert and the $662,-968.10 evidenced by paper indorsed by Miller Wingert or signed by him as comaker. Dividends paid on this paper by the estates of the two bankrupt corporations could not possibly reduce the debts to the level of the assets, for the reason that the total of the assets of both corporations is only $154,250; and if this entire amount be taken from the liabilities of the individuals, it still leaves their liabilities greater than the total of their assets.

It is true that the liability of some of respondents on indorsements is less than others; but in the case of the large indorsers any right of contribution would manifestly avail nothing against the outstanding liabilities, and in the case of those who have indorsed for less, the right of contribution against the large indorsers would be worth but very little. It is clear, to illustrate, that no possible right of contribution against his coindorsers and comakers could make Miller Wingert solvent when his liabilities are $695,-000 and his assets only $113,000. Nor could

the right of contribution make Lewis P. Wingert solvent, where the right would exist against insolvent estates with such great liabilities as those of Miller, William, and Martha Wingert. While we agree, therefore, that, when the liability as an indorser or comaker is counted as a liability of an alleged insolvent, the value of his right of contribution should be set off against it as an asset, we do not think that the failure to do that in these cases affects the result, as by no possibility could it result in showing the solvency of any of the respondents.

A number of minor points are raised by the assignments of error, but none of them are of sufficient importance to merit any extended consideration. The point is made that the special master excluded testimony of sales of property made in the neighborhood of property of respondents, the value of which was being inquired into. We find, however, that the defendants were allowed great latitude in proving values, and in the few cases where testimony relating thereto was excluded, either the witnesses were not shown to possess sufficient knowledge of values or, in the case of sales, there was no such proof of similarity of conditions as would make the evidence admissible. One complaint is that a witness was not allowed to testify to the value of certain buildings; but it appears that he had no knowledge whatever of market values, and proposed to base his opinion solely upon estimated cost of reproduction and depreciation without reference to what the property would sell for. It is clear that such testimony would have been of little or no value to the court. We agree with the contention that, even though the testimony offered was not competent, the special master should have received it under objection and certified it to the court with his rulings thereon; but the record shows that its exclusion could not have done any harm and certainly would not warrant remanding the case.

The other exceptions are so manifestly lacking in merit as not to warrant discussion. Most of them relate to conclusions drawn by the special master as to evidentiary facts bearing upon the question of solvency. This court, manifestly, cannot take upon itself the functions of an auditor, but, where facts are found by a master and approved by a trial judge, must accept them as the facts of the case, unless it plainly and unmistakably appears that they are wrong.

After careful examination of the records in all six cases, we think that the decrees should be affirmed.

Affirmed.