## In re PREBLE CORPORATION.

District Court, D. Maine, S. D.

Dec. 17, 1935.

John D. Clifford, Jr., of Portland, Me., Peter Isaacson, of Lewiston, Me., Joseph B. Jacobs, of Boston, Mass., and R. O. Brewster, of Portland, Me., for debtor corporation.

W. B. Nulty, of Portland, Me., and Carroll Perkins, of Waterville, Me., for Bondholders' Committee, Creditors.

PETERS, District Judge.

In this proceeding by a debtor corporation to effect a reorganization under 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, it appears that the property involved is a parcel of land near the business center of Portland improved by the erection of office and other buildings for business purposes thereon.

This real estate is covered by three mortgages securing bonds and notes. According to the petition, these consist of a first mortgage securing $1,205,500 of bonds now outstanding, a second mortgage securing $46,000 of notes, and a third, or so-called general mortgage, for $354,000 in form of bonds. Other debts, taxes, and overdue interest bring the total indebtedness to approximately $1,900,000.

The only assets, other than this improved real estate, were stated in the petition to be $7,000 in cash and some receivables and accrued items amounting to less than $50,000. It appears that the corporation also has a claim being litigated against a closed bank amounting to some $600,000, but which, if found due in full, will yield less than one-half that sum on account of the fact that the bank would pay less than 50 per cent. of its obligations if this claim should be allowed.

Insolvency of the corporation is admitted. I find that the value of the real estate, covered by the mortgages is substantially less than the amount of the outstanding first mortgage bonds.

Plans for reorganization have been submitted both by the debtor and by a committee representing the first mortgage bondholders, and amendments have been proposed; but the result has been nil, as each party rejects the plan of the other.

The last amendment proposed by the debtor involves a radical departure from the theory of previous plans, in that it eliminates the necessity of consent by any of the first mortgage bondholders, on the stated ground that the value of their interest as a class is to be paid in full.

Motions filed by the debtor allege the impossibility of obtaining from the first mortgage bondholders the necessary consent to the debtor's plan, and propose to amend it "by striking out all of the provisions of said plan relating to first mortgage bondholders and inserting in lieu thereof, in accordance with section 77B of the Bankruptcy Act, as amended (b) (5) (c), (e) (1) (c), 11 U.S.C.A. § 207 (b) (5) (c), (e) (1) (c), provisions for the appraisal of the value of the security held by said first mortgage bondholders, and upon such determination by the Court and the deposit of such securities as the Court may order and a discharge of the first mortgage, for the payment to said first mortgage bondholders of the value of their securities."

The proposed amended plan contains the provision that "The value of the securities held by said bondholders shall be appraised and the value determined by the Court. Upon the final determination of the value of the securities of such creditors, classified as Class One, the debtor will, within such time as may be fixed by the Court, deposit with the Trustees a sum equal to the value of the interest of the class of such creditors, classified as Class One, as determined by the Court. Upon making such required deposit with the said Trustees, the Trustees will deliver to said debtor a discharge of said first mortgage which now secures said first mortgage bonds."

The final motion of the debtor recites that its proposed amended plan has been accepted by creditors holding two-thirds in amount of the claims of each class affected by the plan, "other than those for whom adequate protection for the realization by them of the value of their interest have

been made, and similar acceptances filed by or on behalf of stockholders of the debtor holding a majority of the stock of each class," and moves "that an order be entered confirming said plan and that the value of the interests of the First Mortgage Bondholders, classified as Class One, be appraised by this Court that the debtor corporation may pay to them, under orders of Court, the value of their interests."

The language used is rather vague, but it is plain that the debtor asks and its proposed plan calls for an appraisal of the value of the property mortgaged to secure the first mortgage bonds, and, upon payment of that amount, an order of court directing the discharge of the mortgage.

I find that the proposed plan of the debtor, as amended, was seasonably assented to by the necessary percentages of all classes in interest, except the first class, or first mortgage bondholders.

The matter came on for hearing on the motion of the debtor that its plan, with the proposed amendment, be confirmed and that an appraisal be ordered with a view of having the mortgage discharged upon payment of the appraised value.

At the same time I heard the motion of the bondholders' committee, that, upon a finding of insolvency, an order be entered either to liquidate the estate or dismiss the proceedings.

■ 1. The plan of the debtor to obviate the necessity of consent by the first mortgage bondholders by having their security appraised and an order entered to discharge the mortgage, in my opinion is not authorized and cannot properly be approved.

The paragraph of section 77B relied upon by the debtor specifies that "(b) A plan of reorganization * * * (5) shall provide in respect of each class of creditors of which less than two thirds in amount shall accept such plan * * * adequate protection for the realization by them of the value of their interests, claims, or liens," either by handling the property subject to the liens, or by a sale free of liens at a fair upset price and the transfer of the liens to the proceeds, "or (c) by appraisal and payment either in cash of the value either of such interests, claims, or liens, or, at the objecting creditors' election, of the securities allotted to such interests, claims, or liens under the plan, if any shall be so allotted." (11 U.S.C.A. § 207 (b) (5) (c).

■ It is not clear that the language of the provisions relied upon was intended to be applicable to a situation where a whole class of mortgage bondholders, whose security is less in value than the debt, refuses to accept a plan. In any event, a right to arbitrarily appraise a whole class of creditors out of the picture is not expressly granted. If that had been the intention of Congress it could have been easily stated. The right of appraisal and payment must be considered in connection with the other language of the sub-section, and from this one gets the clear impression that a paramount thought throughout is that objecting creditors must receive an undoubted equivalent for their liens and be fully protected in their rights.

Judge L. Hand, for the Circuit Court of Appeals in the Second Circuit, in the Murel Case (In re Murel), 75 F.(2d) 941, 942, in considering part of this subsection in connection with the words "adequate protection", says:

"It merely gives power generally to the judge 'equitably and fairly' to 'provide such protection,' that is, 'adequate protection,' when the other methods are not chosen. * * * It is plain that 'adequate protection' must be completely compensatory. * * * A creditor * * * wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence."

I cannot think that in the case of a mortgage on real estate worth less than the debt the mortgagee will be "adequately protected" in his rights by a plan which binds him to the result of an arbitrary appraisal and forces him to discharge his mortgage on receipt of a sum which one or more appraisers or a judge might think the property worth. Certainly he would not be sure of receiving the "indubitable equivalence" of his lien to which he is entitled.

■ 2. A plan may not be confirmed if it is not fair and equitable, or if it discriminates in favor of one class of creditors or stockholders or is not feasible.

In such a case as this, to take the property from the mortgagee upon an appraisal is an attempt to use a supposed or possible value, over and above the appraisal, for the benefit of other creditors and stockholders. If there is any such surplus value, it belongs to the first mortgagee, up to the

amount of his debt. If there is none, there is nothing to build on, and there would seem to be no object in having an appraisal, in the absence of a disclosure of a method of raising the money, unless junior interests are prepared to advance the money on a chance of increased value in the future, and there is no information before the court to that effect.

■ A plan cannot be called either fair or feasible which discloses no method or probability of being carried out unless, perchance, the appraisers make a mistake in valuation..

3. I also regard established constitutional limitations as decisive against the debtor's interpretation of the subsection of the statute in question.

■ Under their contract, the first mortgagees here are entitled either to their money or to the property. The obligation of this contract cannot be directly impaired by legislation, although its enforcement may be delayed and remedies affected. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, at page 680, 55 S.Ct. 595, 79 L. Ed. 1110; Louisville Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 858, 79 L.Ed. 1593, 97 A.L.R. 1106.

Mr. Justice Brandeis, in the case last mentioned, says:

"No instance has been found, except under the Frazier-Lemke Act [held unconstitutional] * * * of either a statute or decision compelling a mortgagee to relinquish the property to the mortgagor free of the lien unless the debt was paid in full. This right of the mortgagee to insist upon full payment before giving up his security has been deemed of the essence of a mortgage. His position in this respect was not changed when foreclosure by public sale superseded strict foreclosure or when the Legislatures of many states created a right of redemption at the sale price. *To protect his right to full payment or the mortgaged property, the mortgagee was allowed to bid at the judicial sale on foreclosure.*" (Italics are mine.)

■ It is apparent that what the debtor asks the court to do here, and what it claims the statute authorizes the court to do, is equivalent to ordering a sale of the mortgaged property without giving the mortgagee a chance to bid and thus protect his right of full payment. For that reason the usual sale free of liens, when ordered, in no way impairs the substantive right of a mortgagee because he has an opportunity to bid; but even a sale free of liens will never be ordered if it appears that the amount of encumbrance exceeds the value of the property.

Again quoting from the opinion in the Radford Case:

"Bankruptcy acts had, either expressly, or by implication * * * authorized the court to direct, in the interest of other creditors, that all liens upon property forming a part of the bankrupt's estate be marshaled; that the property be sold free of encumbrances; and that the rights of all lienholders be transferred to the proceeds of the sale—a power which 'had long been exercised by federal courts sitting in equity when ordering sales by receivers or on foreclosure.' * * * But there had been no suggestion that such a sale could be made to the prejudice of the lienor, in the interest of either the debtor or of other creditors. By the settled practice, a sale free of liens will not be ordered by the bankruptcy court if it appears that the amount of the encumbrance exceeds the value of the property. And the sale is always made so as to obtain for the property the highest possible price. No court appears ever to have authorized a sale at a price less than that which the lien creditor offered to pay for the property in cash. Thus, a sale free of liens in no way impairs any substantive right of the mortgagor; and such a sale is not analogous to the sale to the bankrupt provided for by paragraph 7 of the Frazier-Lemke Act, 11 U.S.C.A. § 203 (s) (7)."

The substantive right under the contract, which would be directly impaired by the interpretation asked for by the debtor, is the right to protect his security at a sale.

An attempt to take the property from the mortgagee upon an arbitrary appraisal with no provision whereby the mortgagee may protect himself by a bid, where the property is worth less than the debt, is certainly an unauthorized exercise of legislative power, according to the most recent pronouncements of the Supreme Court.

■ 4. As I do not consider that I should approve the plan, the next question is the disposition of the motion of the Committee of Bondholders that the petition be dismissed or liquidation be ordered.

Insolvency is apparent and admitted. To dismiss the petition, in all probability, would

result in bringing the case back to the court on a bankruptcy petition. Consequently, an order will be entered for the liquidation of the estate.