## WAYNE UNITED GAS CO. v. OWENS– ILLINOIS GLASS CO. et al.
### No. 4080.

Circuit Court of Appeals, Fourth Circuit.
Aug. 6, 1937.

Fred O. Blue and Robert S. Spilman, both of Charleston, W. Va., for appellant.

Arthur G. Stone, of Charleston, W. Va. (Donald O. Blagg and Rummel, Blagg & Stone, all of Charleston, W. Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree dismissing a petition for corporate reorganization filed under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207. Upon motion of appellees, we dismissed the appeal at the June term, 1936, 84 F.(2d) 965; but this action was reversed by the Supreme Court. Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557. The appeal is accordingly before us for hearing on the merits, and the subject of review is the decree which dismissed the petition for reorganization on the ground that it was not filed in good faith and did not present a feasible plan or method of reorganizing the debtor corporation within the meaning of the act.

As basis for the holding that the petition was not filed in good faith and that the proposed plan was not feasible, the court below found with respect to the first mortgage indebtedness of the corporation that it amounted to $1,900,000; that the total value of all of the property was not sufficient to discharge this indebtedness; that the indebtedness was due and that decree had been entered foreclosing the mortgage securing same; that there was no immediate prospect of enhancement in value of the mortgaged property; and that the prospect of earnings from other sources was too remote to afford protection to the first mortgage bondholders. With respect to junior securities and common stock, the court found that these represented no equity in the mortgaged property, and that the effect of the plan of reorganization would be to permit a diversion of the corpus of that property for the benefit of the holders of junior obligations. He found, further, that the petition was not filed in good faith for the payment of the first mortgage indebtedness according to the adjudicated rights of bondholders; that the

necessary result of the approval of the petition would be to hinder, delay, and prevent the payment of that indebtedness and to continue the control and management of the corporation in the hands of those whose securities represented no property value; and that it did not appear that any plan of reorganization could be proposed by the debtor which would adequately provide for the protection of the first mortgage bondholders or which would be acceptable to them. With respect to the plan proposed and prior plans, which it amended, he found that they "(a) Do not comply with the provisions of section 77B of the Bankruptcy Act, and do not present a feasible plan or method of reorganizing the Debtor corporation within the meaning of said Act; (b) Do not provide adequate protection for the realization by the first mortgage bondholders of the Debtor of the value of their interest, claim and lien, as required by said Act; (c) Would materially and adversely affect the rights, claims and interest of said first mortgage bondholders, within the meaning of the provisions of said Act, and that the holders of more than 92 per cent of the said first mortgage bonds have refused to approve or accept the same."

In making these findings the judge below had before him, not only the petition of the debtor corporation, the objections thereto filed by the first mortgage bondholders, and the answer of the trustees under the deed of trust securing the first mortgage bonds, but also the record in a receivership and mortgage foreclosure suit instituted in the circuit court of Kanawha county, W. Va., and carried by appeal to the Supreme Court of Appeals of that state, the decision of which is reported in Bell v. Wayne United Gas Co., 116 W. Va. 280, 181 S.E. 609. From these records the following facts appear:

The debtor corporation was organized in 1929 with 250,000 shares of common capital stock, valued on its books at $600,000. It issued first mortgage 6½ per cent. bonds in the sum of $1,500,000, secured by a deed of trust on all of its properties, and 7 per cent. notes in the sum of $500,000, secured under a trust agreement by an equal amount of second mortgage bonds; $1,361,916.60 was received by debtor from the sale of the first mortgage bonds. Of this amount $615,666.60 was used in payment for properties which were transferred to debtor by a predecessor company and for

which the promoters of that company, who were the promoters also of debtor, had paid a total of $552,000. Of the remainder of the amount received from the first mortgage bonds, $600,000 was held as a development fund, $66,250 was deposited to pay interest on the bonds as it matured, and $80,000 was paid for expenses of organization and financing. The capital stock and the 7 per cent. notes secured by second mortgage bonds were issued to the promoters and their financial agents, and the debtor received nothing of value for them.

In the year 1932, receivers were appointed for debtor by the circuit court of Kanawha county, W. Va., in a suit instituted by a creditor and a stockholder. The trustees under the first mortgage filed answer and cross-bill in that suit, alleging that at the direction of the holders of more than 25 per cent. of the bonds secured by the mortgage they had declared the unpaid bonds in default and immediately due and payable, and prayed for a foreclosure of the mortgage. The glass companies who are appellees here filed answers as holders of bonds secured by the mortgage and joined in the prayer of the trustees for foreclosure. Holders of common stock and notes secured by the second mortgage bonds filed petitions alleging that the glass companies were guilty of violating the terms of a contract which they had entered into with debtor and that the damages arising from this breach should be applied on the bonds held by the glass companies, also that the glass companies had purchased the bonds held by them at less than face value and under such circumstances as to raise a trust for debtor's benefit with respect to the bonds purchased. The circuit court of Kanawha county ruled against petitioners on the issues raised by the petition last mentioned and gave decree against debtor for the full amount of the first mortgage bonds with interest and for foreclosure of the mortgage. This decree was affirmed on appeal except with respect to the issue as to breach of contract, as to which the lower court was directed to determine in advance of sale whether or not there had been a breach of the contract alleged and, if so, the damages resulting therefrom. Bell v. Wayne United Gas Co., 116 W. Va. 280, 181 S.E. 609. It was admitted on the hearing before us that the circuit court had since heard the case as to the issue left open, holding there had been no breach of contract on the part of the glass companies,

and that the Supreme Court of Appeals had refused an appeal from this adjudication. It thus appears that there is a final decree of the state court adjudging all of the first mortgage bonds to have been matured by the action of the trustees under the acceleration clause of the mortgage, that the amount due on these bonds has been adjudged to be the face amount thereof with interest, and that the property embraced in the mortgage has been ordered sold for the satisfaction of this indebtedness.

In November, 1935, after the decision of the Supreme Court of Appeals of West Virginia had been rendered, debtor filed in the court below a petition for reorganization, which has been twice amended. At that time, debtor had outstanding the first mortgage bonds, which with unpaid interest amounted to approximately $1,900,000. It also owed $475,000 on the notes secured by the second mortgage bonds and unsecured indebtedness in excess of $200,000. The assets of debtor consisted of cash in the hands of its receivers amounting to $532,- 170.10, which was subject to the lien of the first mortgage, and other property, all of which also was subject to the first mortgage and was worth not exceeding $750,- 000. It thus appears that debtor's entire assets were subject to the lien of the first mortgage and that their total value was only about two-thirds of the amount of the bonds and interest secured by that mortgage. It appears, also, that at no time since the organization of debtor has the value of its assets equaled the amount of the first mortgage indebtedness and that there is no prospect of any such enhancement in the value of the assets as would bring it up to the amount of that indebtedness, but that the chief assets of debtor, other than the cash above mentioned, consist of gas leases which will diminish in value with the depletion of the gas supplies resulting from the operation of the properties.

The plan of reorganization, as finally amended, proposes: (1) That the cash in the hands of the receivers be used to pay the past-due interest on the first mortgage bonds and the past-due sinking fund installments required by the first mortgage; (2) that the default in the payment of these bonds be waived and that the original date of maturity be restored so that they will become due in 1944, as originally issued, and that they continue to be secured by the existing mortgage with all of its provisions

unimpaired, except that debtor waive the cumulative feature of the allowances for capital expenditures in computing the quota of available earnings to be applied to sinking fund; (3) that debtor obtain upon its unsecured note sufficient funds to take care of any balance of sinking fund requirements, taxes, liens, and expenses of reorganization and to furnish the corporation with adequate working capital, this note to bear 6 per cent. interest, payable semiannually, with principal payable only out of earnings not required by the mortgage to be set aside to sinking fund; (4) that the notes secured by second mortgage bonds and the bonds securing them be canceled and that 6 per cent. income notes or debentures of the debtor be issued in lieu thereof payable after the maturity of the first mortgage bonds, with interest on such notes payable annually out of income not required to be allocated to sinking fund; and (5) that 25 per cent. of the stock of the reorganized company be issued to the person committing himself to furnish the cash required for the reorganization and the remaining 75 per cent. be issued to the present stockholders of the debtor.

As the property of the corporation belongs in effect to its first mortgage bondholders with no equity for stockholders or junior encumbrancers, it is perfectly clear that the effect of the plan proposed is to turn over the control of the corporate property to those who have no real interest in it and to make it possible for them, through the payment of salaries to corporate officers and interest upon the debentures to be issued to themselves in lieu of notes secured by the second mortgage bonds, to deplete the assets to the prejudice of the owners of the first mortgage bonds who are the real owners of the property and entitled thereto. As heretofore stated, the chief assets of the debtor are its gas properties, which will diminish in value as they are operated; and it is apparent that the only adequate security for first mortgage bondholders in such a situation is the provision for the setting aside from income of a sufficient sinking fund to compensate for the depletion of the gas supply due to the operation of the properties. The court below has found, and we think properly, that neither as originally executed nor as modified by the proposed plan does the mortgage here properly protect the interest of first mortgage bondholders in this respect. It requires only $267,000 to be certainly set aside over the life of the mortgage for the retirement of the $1,500,000 bonds. Sixty per cent. of "available earnings," it is true, is also to be set aside for this purpose; but "available earnings" under the definition of the mortgage is only that which remains after deducting operating and administrative expenses, taxes, interest, and large allowances for the reduction of other indebtedness and for capital expenditures. The only change in these provisions proposed by the plan of reorganization is the elimination of the cumulative feature of this allowance for capital expenditures. Under the terms of the proposed plan, therefore, not only can operating expenses and the interest on the income debentures, held by those who will control the company through stock ownership, be paid out of income realized from operation resulting in the depletion of wasting assets, but the note given under the plan of reorganization can also be thus paid. With the control of the company in the hands of those who have no real interest in its assets and who could be interested in continuing its operation only for the purpose of getting everything possible from it in the way of operating salaries and interest payments, and with no adequate check against these, the position of the first mortgage bondholders would be most precarious. They might reasonably expect that at the maturity of the bonds they would find themselves "holding the bag," with their security largely exhausted through the operations of the company, the income from which would have gone into the payment of salaries, the note given for reorganization purposes, and the interest on the income debentures.

And, quite apart from the unfairness of the proposed plan to first mortgage bondholders, it is clear that as a plan of reorganization it is not feasible, for the reason that it involves the assumption of a greater debt than the property can support. As heretofore stated, the value of the entire property, exclusive of cash in the hands of the receivers which will be expended in the reorganization, does not exceed $750,000; and it is utterly absurd to start the reorganized company off with an indebtedness of exceeding $2,000,000. The only possible motive which could inspire such a reorganization would be the desire of stockholders and holders of income debentures to siphon out for their own benefit the assets pledged for the security of first mortgage bondholders.

■ The findings of the court below with respect to the good faith of debtor in the filing of the petition, the feasibility of the plan therein proposed, and the unfairness of that plan to first mortgage bondholders are findings of fact, which we will not disturb unless clearly wrong. Central States Life Ins. Co. v. Koplar Co. (C.C.A.8th) 85 F.(2d) 181; Johnston v. Johnston (C.C.A.4th) 63 F.(2d) 24; Henderson County v. Wilkins (C.C.A.4th) 43 F.(2d) 670; Wingert v. President Directors and Company of Hagerstown Bank (C.C.A.4th) 41 F.(2d) 660; Virginia Shipbuilding Corporation v. United States (C.C.A.4th) 22 F.(2d) 38, 51; Wolf Mineral Process Corporation v. Minerals Separation North American Corporation (C.C.A.4th) 18 F.(2d) 483; Arkansas Natural Gas Corporation v. Pierson (C.C.A.8th) 84 F.(2d) 468, 470; Gaskins v. Bonfils (C.C.A.10th) 79 F.(2d) 352, 357. For the reasons stated, we think that they were clearly right; and that they thoroughly justified the dismissal of the petition is hardly open to question. It is true that subdivision (a) of the statute (11 U.S.C.A. § 207 (a) relating to the approval of the petition makes no specific requirement that, as a condition of approval, the plan be fair or equitable or that it be feasible. Both these requirements, however, which are prescribed by subdivision (f), 11 U.S.C.A. § 207 (f), as conditions of confirmation, are fairly included within the requirement of good faith in the filing of the petition prescribed by subdivision (a); and no plan can reasonably be said to be presented in good faith where it fails to present a feasible and practicable plan of reorganization or where the plan presented is so essentially unfair to one class of creditors that no court, in the absence of acceptance by them, would confirm it under subsection (b) (5) (d), 11 U.S.C.A. § 207 (b) (5) (d), as providing "equitably and fairly" for their protection. As said by Chief Justice Hughes speaking for the Supreme Court in Tennessee Pub. Co. v. American Nat. Bank, 299 U.S. 18, 57 S.Ct. 85, 87, 81 L.Ed. 13:

■ "Nor do we need to inquire as to the precise limits of the concept of 'good faith' as required by section 77B. Whatever these limits may be, the statute clearly contemplates the submission of a plan of reorganization which admits of being confirmed as 'fair and equitable' and as 'feasible.' However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation. Subsection (f) of section 77B (11 U.S.C.A. 207 (f) provides for the confirmation of a plan only if the District Judge is satisfied 'that (1) it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible.' These are prime conditions. Unless the District Judge finds that the plan has these qualities, he need go no further. Unless he so finds, he has no authority to proceed."

■ It is argued by debtor that the plan should be held to have been submitted in good faith because it proposes to give the first mortgage bondholders the same security that they had prior to the default and receivership, and that, in fact, their position is improved by the proposal to waive the cumulative provision of the mortgage with respect to allowances for capital expenditures. This however, overlooks the fact that at the time of the filing of the petition the bondholders had invoked the acceleration feature of the mortgage, inserted for their protection, and that at that time all of the bonds were legally due and payable and had been so adjudicated in the suit in the state court. As pointed out by the District Judge, the mortgage prior to default and acceleration did not adequately protect the interest of the bondholders; and a plan cannot be said to be fair and equitable which restores to efficacy unfair provisions of an instrument which have ceased to have any application to the rights of the parties. The fairness of the plan with respect to the first mortgage bondholders must be judged with reference to their rights at the time of the filing of the petition, not with reference to their rights prior to that time or to what their rights would have been if no default or acceleration of maturity had occurred.

■ We are not to be understood as holding that it is not within the power of the court to provide in a proper case for the curing of a default or for the extension of the time for the payment of an indebtedness. It is not necessary to decide that question here. Subdivision (e) (1) of the act as amended (11 U.S.C.A. § 207 (e) (1) (first proviso), provides that, where consent of two-thirds of a class of creditors is lacking, a plan which affects their rights and which does not provide for the payment in full of their claims in cash may be

confirmed only if provision is made for the protection of their interest, claims, or liens in the manner provided in subdivision (b) clause (5), 11 U.S.C.A. § 207 (b) (5). Looking, then, to that subdivision and clause, we find that the plan must provide adequate protection for the realization by such creditors of the value of their interests, claims, or liens (a) by the transfer or sale of the property subject thereto, or (b) by a sale free of such interests, claims, or liens at not less than a fair upset price and the transfer of the interests, claims or liens to the proceeds of sale, or (c) by appraisal and payment either in cash of the value of such interests, claims or liens or, at the objecting creditors election, of securities allotted to such interests, claims, or liens under the plan, if any shall be so allotted, or (d) "by such method as will in the opinion of the judge, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection." As the plan here does not profess to provide protection under (a) (b) or (c), confirmation would necessarily be sought under (d); and as the judge is of opinion that the plan is unfair to the bondholders and does not provide adequate protection for their interests he could not approve it under (d) as "equitably and fairly" providing such protection. The plan could not be confirmed, therefore, as the consent of two-thirds of the class of creditors is lacking and the condition is not complied with which dispenses with the necessity of their consent. In addition to this, the judge could not confirm the plan as "fair and equitable" within the requirement of subdivision (f). In such·case, if there is no proposal to cure the defect in the plan, there is nothing for the judge to do but dismiss the petition. Tenn. Pub. Co. v. American Nat. Bank, supra.

And there is another ground upon which the action of the lower court in dismissing the petition as not having been filed in good faith should be sustained. Since the· stockholders and junior encumbrancers had no real interest in the property and no reasonable prospect of ever having such interest, whether the value of the interest of the first mortgage bondholders be considered the face· value of their bonds or, as argued, merely the value of the property securing them, they had no interest in any plan for reorganizing the corporation, as they would not be affected by such plan and for that reason would not be entitled to voice or consideration in its adoption. See subdivision (b) (5).

The act expressly provides that, if the judge determines that the corporation is insolvent, consent by stockholders is not requisite to the confirmation of the plan. Subdivision (e). And a recent decision of the Supreme Court holds that the same is true of junior encumbrancers who have no equity to be protected by the court and are not affected by the plan. In re 620 Church Street Building Corporation, 299 U.S. 24, 57 S.Ct. 88, 89, 81 L.Ed. 16. See, also, In re Garfield Arm Hotel Building Corp. (C.C.A.7th);[1] Preble Corp. v. Wentworth (C.C.A.1st) 84 F.(2d) 73; In re ·Preble Corp. (D.C.) 12 F.Supp. 1002, 1005; In re Murel Holding Corp. (C.C.A.2d) 75 F.(2d) 941; Francisco Building Corp. v. Battson (C.C.A.9th) 83 F.(2d) 93; Alley "An Appraisal of Some Phases of the Corporate Reorganization Statutes"; XXIII Va. Law Review p. 525 et seq. Stockholders and junior encumbrancers ought not be heard to insist that the court retain and consider a plan of reorganization, where, if retained, they would not be entitled to a voice as to its adoption or rejection and would have no such interest as the court would be required to consider in passing upon it. At all events, it cannot be said that the dismissal of a petition put forward by stockholders and junior encumbrancers under such circumstances constitutes prejudicial error of which they can complain.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.

---

[1] No opinion for publication.