**In re VAN SWERINGEN CORPORATION et al.**

**CLEVELAND HOTEL PROTECTIVE COM-MITTEE et al. v. NATIONAL CITY BANK OF CLEVELAND et al.**

No. 10127.

Circuit Court of Appeals, Sixth Circuit.

May 31, 1946.

Robert H. Jamison and E. D. McCurdy, both of Cleveland, Ohio (Garfied, Baldwin, Jamison, Hope & Ulrich, Robert F. Lee, and Boyd, Brooks & Wickham, all of Cleveland, Ohio, on the brief), for appellants.

J. Hall Kellogg and John T. Scott, both of Cleveland, Ohio (M. B. & H. H. Johnson, Brooks W. Maccracken, Hauxhurst, Inglis, Sharp & Cull, and I. W. Sharp, all of Cleveland, Ohio, on the brief), for appellees.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

This appeal by the Cleveland Hotel Protective Committee and its individual members and the Henry George School of Social Science is from an order entered March 6, 1945, by the District Court confirming a plan of reorganization of the Cleveland Terminals Building Company, subsidiary debtor, in the matter of the Van Sweringen Corporation, debtor, in proceedings for reorganization of both corporations instituted in 1936 under Section 77B and subsequently pursued under Chapter X of the National Bankruptcy Act. 11 U.S.C.A. §§ 207, 501 et seq.

The subsidiary debtor, The Cleveland Terminals Building Company, is lessee of the Cleveland Hotel property, situated on the Public Square in Cleveland, Ohio, under a ninety-nine-year lease from the National City Bank of Cleveland, as successor trustee to The Guardian Trust Company of Cleveland, which holds the fee title to the Cleveland Hotel property real estate in trust for 7,000 shares of equitable interests in the fee, such interests being represented by transferable land trust certificates.

Appellants attack the order of the District Court confirming the plan of reorganization upon the grounds that: (1) as owners or representatives of a substantial proportion of the trust certificates, they were wrongfully refused the right to intervene generally as interested parties in the reorganization proceedings; (2) the acceptance of the plan by the National City Bank, as trustee, was ineffective and not binding upon the beneficiaries of the trust because of the trustee's alleged improper conduct and abuse of its fiduciary relationship; and (3) the plan is unfair and inequitable to the beneficiaries of the trust.

█ (1) A study of the eight-hundred-and-twenty-five-page record of the proceedings below convinces us that appellants were afforded as adequate hearings on all material objections raised by them in the proceedings conducted before the special master to whom the cause was referred, and later before the District Judge, as if they had been granted the right to intervene generally. The special master permitted introduction of the evidence offered by the objecting certificate holders in their effort to show that the trustee had acted in bad faith, had not acted with propriety in obtaining consents to acceptance of the plan, had not acted properly in filing its acceptance, and had failed to fulfil its duties as fiduciary. Both the special master and the District Judge received and considered elaborate briefs of appellants, presenting the same contentions made here. Oral arguments of their attorneys were also heard and considered. No prejudice to appellants or abuse of discretion by the District Court in refusing their petitions for general intervention is apparent.

█ (2) Appellants admit that they do not claim that any one act, or any one particular activity on the part of the trustee, in and of itself, establishes the improper conduct of which they complain. They urge, however, that "the Trustee lost its perspective, became partial and prejudiced in its commitment to the Plan, and thereupon entered into a highly organized campaign on a commercial basis, to consummate the Plan"; and that the "cumulative effect of all of the various activities of the Trustee taken together" should be considered by the court. Pepper v. Litton, 308 U.S. 295, 304, 305, 60 S.Ct. 238, 84 L.Ed. 281, and American United Mut. Life Ins. Co. v. Avon Park, 311 U.S. 138, 145, 61 S.Ct. 157, 85 L.Ed. 91, 136 A. L.R. 860, are cited. Appellants point to the personal solicitation of acceptances by

the trustee bank through its officers and employees, through brokers and other banks and institutions, through agents of the lessee, and by means of letters and individual communications. They contend that pressure was exercised by the trustee upon beneficiaries of the trust who indicated opposition to the plan. They attempt to show that the trustee had a self-interest in the acceptance of the plan, in that it would recoup fees and expenses incurred in connection with an earlier, abandoned plan.

Appellants insist that consents to the plan were obtained from beneficiaries by the trustee through failure to give material facts concerning it, and through misrepresentation of material facts. They contend further that there has been an important change in the legal rights of the beneficiaries since the acceptance of the plan by the trustee, thus necessitating a new submission of the plan to certificate holders. They say, moreover, that the acceptance of the plan by the trustee was not in good faith and that the plan has not been approved by the required number of beneficiaries.

This court reiterates its assertion, made in In re The Van Sweringen Co., 6 Cir., 119 F.2d 231, 234, that we uphold the standard of the punctilio of honor exacted of trustees so aptly described by Chief Judge Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1. Truly the conduct of fiduciaries must be kept forever "at a level higher than that trodden by the crowd." From careful consideration of appellants' insistencies, however, we find no lowering of the required standard by the trustee, National City Bank of Cleveland, either in individual instances, or in the combination of its activities condemned by appellants.

As was correctly observed by the District Judge in his memorandum opinion, the power, duty and authority of the trustee, as defined in the trust indenture, adequately support its conduct and action in attempting to secure consents of certificate holders, so long as it honestly believed that in doing so it was acting for the best interest of the certificate holders; and the activity of the trustee in attempting to secure consents was the only means of obtaining action on the plan. In the words of the District Judge: "If the certificate holders were not overreached or caused to act to their harm, through fraudulent under or over-statements as to the merits of the plan, the trustee was justified in attempting actively to secure consents; and, if its representations as to the beneficial provisions of the plan were made in good faith and in an honest belief that the acceptance of the plan was in the best interest of the certificate holders, such activities now should not be nullified and condemned."

The District Court overruled the objections and exceptions of appellants to the report of the master sustaining the validity of the trustee's acceptance of the plan and confirmed the report. The court specifically found that the National City Bank of Cleveland, Trustee, in soliciting consents to and approvals of the plan from the holders of the trust certificates of equitable ownership, was guilty of no fraud, made no misrepresentations, and neither withheld nor failed to disclose any material information; and that none of the consents and approvals procured by the trustee was obtained through any improper conduct of the trustee, or as a result of any abuse of its fiduciary relationship. This finding of fact was amply justified by the evidence, viewed in entirety; and, as we have previously observed, Civil Procedure Rule 52 (a), 28 U.S.C.A. following section 723c, provides that the findings of fact of a District Court should not be set aside unless clearly erroneous and the findings of a master, to the extent that the court adopts them, shall be considered the findings of the court. See United States for Use of Chamberlain Metal Weather-Strip Co. v. Madsen Const. Co., 6 Cir., 139 F.2d 613, 615, where we pointed out the futility of reargument in a reviewing court of issues of fact resolved against an appellant if the findings below are supported by substantial evidence and are not clearly erroneous.

Nothing of value could be added to the sum total of jurisprudence by a long

review of the facts with respect to the activities of the trustee on the one hand, or the objectors on the other who expended utmost energy, both in and out of court, to defeat the reorganization plan advocated by the trustee. Their extreme activity necessitated counteraction, unless the trustee was to sit idly by and permit to fail of confirmation a plan which in good faith it considered to be to the best interest of the certificate holders. The District Court found as a fact that the trustee had duly and properly determined on June 29, 1942, that the required three-fourths in interest of the holders of certificates of equitable ownership in the trust property had in writing consented to and approved the plan and the amendment and modification of the declaration of trust and the lease; and that, on that date, the trustee, after duly and properly determining the plan effective, had accepted it. This finding of fact was supported by the evidence, notwithstanding attempts of appellants to show that they held sufficient withdrawals to reduce the trustee's percentage of acceptances below the required seventy-five percent. As stated by the District Court, if there were in the hands of objectors any withdrawals of consents by certificate holders, such withdrawals should have been directed to and placed in possession of the trustee who had received the consents. The District Judge well reasoned: "If certain withdrawals, subsequent to the trustee's action, are permitted to nullify all that has been done, then no trustee ever is in a position to act with any assurance, and orderly reorganization thus may be thwarted by the eleventh hour activities of a few dissatisfied certificate holders or a committee representing them." In its opinion, the court asserted that it seemed to be an undisputed fact that, at the time of acceptance of the plan, the trustee had in its possession the requisite consents lawfully to vote upon acceptance. We find no merit in the argument of appellants that there has been a material change in the legal rights of the certificate holders since the acceptance of the plan by the trustee. The cases cited by appellants do not apply in any degree of similarity to the situation disclosed here. Continental Ins. Co. v. Louisiana Oil Refining Corp., 5 Cir., 89 F. 2d 333; In re Levy, D.C., 110 F. 744; Myers v. International Trust Co., 273 U. S. 380, 47 S.Ct. 372, 71 L.Ed. 692.

■ (3) In attacking the confirmed plan of reorganization as unfair and inequitable to the trust beneficiaries from whom the lessor trustee, National City Bank of Cleveland, holds in trust the legal title to the demised property appellants contend that the plan should be condemned under the principles of Case v. Los Angeles Lumber Co., 308 U.S. 106, 114, 115–122, 60 S.Ct. 1, 84 L.Ed. 110. Those accepted principles are that whether a plan of reorganization is fair and equitable within the meaning of the pertinent provisions of the Bankruptcy Act is a question of law; that, if a plan of reorganization is not fair and equitable as a matter of law, it cannot be confirmed by the court even though the percentage of the various classes of security holders required by the Act for confirmation of the plan has consented to and approved it; that the court must use its own informed and independent judgment in every important determination in the administration of the reorganization proceedings; and that, to accord a creditor his full right of priority against the corporate assets where the debtor is insolvent, the participation of the stockholder "must be based on a contribution in money or in money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder."

In three opinions of this court written by Judge Hicks, the "fixed principle" declared in the Los Angeles Lumber Co. case that, in reorganization, creditors to the extent of their debts are entitled to priority over stockholders against the property of an insolvent corporation was applied in affirming the rejection of reorganization plans by the District Court. Metropolitan Holding Co. v. Weadock, 6 Cir., 113 F.2d 207; Whitmore Plaza Corporation v. Smith, 6 Cir., 113 F.2d 210; Highland Towers Co. v. Bondholders Protective Committee of Highland Towers, 6 Cir., 115 F.2d 58. In none of these three cases did the stockholders contribute in money or

money's worth the reasonable equivalent of the participation accorded them by the reorganization plan. Compare the following opinions from other circuits: In re Barclay Park Corporation, 2 Cir., 90 F.2d 595; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237, 245; Sophian v. Congress Realty Co., 8 Cir., 98 F.2d 499, 502; In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 105 F.2d 357; In re Chain Inv. Co., 7 Cir., 102 F.2d 323; Wayne United Gas Co. v. Owens-Illinois Glass Co., 4 Cir., 91 F.2d 827, 832. See also In re 620 Church St. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16.

Mr. Justice Douglas, who wrote the opinion in Case v. Los Angeles Lumber Co., supra, wrote again for an undivided court adherence to its principles in more recent cases. See Consolidated Rock Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Marine Properties v. Trust Co., 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64. Compare the majority opinion by Mr. Justice Reed in Otis & Co. v. Securities & Exchange Commission, 323 U.S. 624, 634, 65 S.Ct. 483, 89 L.Ed. 511, relating to a liquidation pursuant to the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq.

But, in the circumstances confronted and upon analysis of the approved plan of reorganization of the lessee-debtor corporation, it would seem that Case v. Los Angeles Lumber Co., supra, and the kindred cases cited above do not point the way to decision in the present controversy. As stated by the District Judge, this "is not a case of stockholder retention of interest to the detriment of bondholders and creditors"; but our concern is the problem of adjustment of the rights of lessor and lessee under a defaulted lease and the modification of a lease indenture. It is true that the lessor is a creditor—in fact the largest one; but the real issue is whether its best interest would be conserved by acceptance or rejection of the proposed modified lease. The lessor-trustee was vested by the declaration of trust with full authority, in the event of the lessee's default with respect to any of the provisions of the lease, either to terminate the lease or "to take such other action with respect to the lease or trust estate as it shall deem advisable, without reference to the beneficiaries and as if it were the sole legal and equitable owner thereof." The declaration of trust provided further that, by acceptance of any certificate issued under it, the original or any successive holder should be deemed to assent to all provisions contained in the trust agreement.

In a railroad reorganization proceeding, the highest court, again voicing its views through Mr. Justice Douglas, declared that "the question whether a lease should be rejected and if not on what terms it should be assumed is one of business judgment." Group of Institutional Investors v. Milwaukee R. Co., 318 U.S. 523, 550, 63 S.Ct. 727, 743, 87 L.Ed. 959. The Supreme Court held that, under the provisions of the Bankruptcy Act, the Interstate Commerce Commission and the District Court are authorized, in approving a plan of reorganization, to condition acceptance of a lease on terms which are necessary or appropriate to keep the fixed charges within proper limits, or to do equity between claims which arise under the lease and other claims against the debtor. The opinion writer stated (318 U.S. 551, 63 S.Ct. 743, 87 L.Ed. 959): "And we could not say that the Commission, exercising its expert judgment, and the District Court, affirming that judgment, were too generous in the offer which is made to the Terre Haute bondholders or that they should have rejected the lease. We are not warranted in upsetting those determinations on review except on a clear showing that the limits of discretion have been exceeded. We cannot say that here." Discussing its holding in Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, Mr. Justice Douglas stated that, while the court had there held that in applying the full priority rule of the Boyd case (228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931) and the Los Angeles Lumber Products case (308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110) full "compensatory provision must be made for the entire bundle of rights which the creditors surrender," it had been added that "practical adjustments, rather

than a rigid formula, are necessary"; and that the "method of effecting full compensation for senior claimants will vary from case to case." 318 U.S. 556, 63 S.Ct. 745, 87 L.Ed. 959.

In another railroad reorganization case, the Court of Appeals for the Second Circuit applied the authority of Group of Investors v. Milwaukee R. Co., supra, in confirming a plan enabling a railroad company to reject what, in effect, amounted to a burdensome lease. In re New York, New Haven & Hartford R. Co., 2 Cir., 147 F.2d 40, 52.

In our judgment, the approved plan of reorganization in the instant case conforms to the standard established in Group of Investors, supra, and does not conflict with the holding in the Los Angeles Lumber Co. case, or the principles therein declared. In all the circumstances, the plan which the District Court confirmed seems fair and equitable to the beneficiaries of the lessor-trustee; and it appears that the trustee exercised good business judgment in advocating acceptance of the plan of reorganization of the lessee-debtor.

The ninety-nine-year lease of the Cleveland Hotel property to the subsidiary debtor, The Cleveland Terminals Building Company, was dated April 1, 1927, and was executed by the original trustee, The Guardian Trust Company, as lessor. The lease provided for the payment of an annual rental of $192,500, payable in quarterly instalments. In 1932, modifications to the lease were made postponing until July 1, 1942, the maturity date for payment of the rental for the period from April 1, 1932, to June, 1937. By these modifications, the lessee was required to execute and deliver to the trustee equipment leases and chattel mortgages on all the Cleveland Hotel furniture and equipment to secure the payment of the postponed rent. The lessee was required, also, to pay over to the trustee all the net earnings of the demised premises available in cash until the amount of the postponed rent should be paid in full, with stipulated interest. In March, 1935, the appellee-trustee, National City Bank of Cleveland, succeeded the original trustee named in the declaration of trust both as trustee and as lessor under the ninety-nine-year lease of April 1, 1927. In October, 1936, the lessee filed its petition for reorganization, as subsidiary debtor of the Van Sweringen Corporation. The claim of the trustee for accrued rent and other unpaid obligations aggregating $897,-562.59 was allowed as of October 13, 1936, and was classified as secured by the chattel mortgages and the several lease indentures.

The material provisions of the reorganization will now be stated. A new corporation is to be organized, all the stock of which is to be issued to the lessee-debtor, The Cleveland Terminals Building Company, without any contribution of fresh money as capital. The interest of the lessee in the Cleveland Hotel lease is to be transferred to this new corporation. The transfer includes the premises, property, buildings and improvements covered by the lease, and all property of every kind and description incident to or growing out of the operation of the Cleveland Hotel, embracing its inventory, furniture, furnishings, equipment and trade and tenant fixtures, and all receivable funds accumulated as of the date of the transfer. The new corporation will assume all debts and obligations arising out of the operation of the Cleveland Hotel and all debts and obligations of the lessee under the lease, except in respect of accrued and unpaid rent, in the amount of $1,109,904.31, as of July 1, 1942, the date of confirmation of the plan. The fair value of the mortgage chattels was reported by the special master to be $508,473.98. Free and unpledged assets of the lessee-debtor to be transferred to the new corporation were valued by the master at $138,908.57. The free and unpledged assets consisted chiefly of cash on hand, accounts receivable, prepaid insurance premiums, stationery and office supplies, and inventory of foods and beverages.

Without detailing the elaborate provisions of the proposed new lease indenture, it should suffice to say that, in addition to a fixed annual rental of $175,000, the trustee will receive for the benefit of the certificate holders an equitable participation in the net earnings of the Cleveland Hotel so long as the 7,000 certificates of

interest now outstanding remain so. All net earnings from the operation of the hotel not paid to the trustee as rental must be allocated to the purchase and retirement of certificates of interest until one-half of those presently outstanding shall have been retired. Neither the new lessee nor its sole stockholder, the subsidiary debtor, may withdraw money or property from the Cleveland Hotel and its operation until one-half of the now outstanding certificates have been retired. Until such event, the new lessee may not, without the consent of the trustee, assign or mortgage the lease, or sub-let the premises, or engage in any business except the operation of the Cleveland Hotel; and all executive salaries and compensation for management of the hotel must not exceed two percent of the gross cash receipts from its operation. If the new lease is terminated on account of default of the lessee, liquidated damages to the trustee are fixed at $570,000. To secure the payment of the liquidated damages, the new lessee is to give the trustee a chattel mortgage, in form satisfactory to it, on all furniture, furnishings, equipment and trade and tenant fixtures of the hotel, inclusive of after-acquired property. This pledge shall be subject only to existing incumbrances running to the trustee. Until one-half of the presently outstanding certificates of interest are retired, the performance by the new lessee of the covenants of the lease are secured by the pledge of all its capital stock and all dividends and distributions thereon.

Analyzing the situation confronted by the corporate trustee on July 1, 1942, did it exercise sound business judgment in considering that the terms of the new lease furnished a fair and equitable consideration for its waiver of the security behind approximately $500,000 of the lessor's total back-rent claim? Approximately $600,000 of the back-rent claim was unsecured. The trustee had no assurance that it could obtain anything like as advantageous a lease as that presented by the plan of reorganization of the lessee-debtor. Had the trustee cancelled the lease and sequestered the pledged securities, it would have been faced with the necessity of finding a new lessee adequately financed and capable of operating the hotel property successfully. As the District Judge said in his opinion: "If there were any firm offer, or prospect of a better arrangement for operation and management, which would preserve the interests of the trustee and the certificate holders, it has not been advanced." The new lease approved by the District Court contained far better security for the protection of the certificate holders, in the event of default, than did the old one upon which the lessee defaulted. The lessee in the old lease was not obligated to purchase any certificates of interest. The new lease, as has been shown, provides that all the hotel's net earnings above rental requirements and the performance of other covenants are to be applied to the purchase of the certificates of ownership of the leased premises, until one-half of the certificates are retired. As such certificates are purchased from the earnings of the operation of the hotel, the intrinsic worth of the remaining certificates is undoubtedly enhanced. Upon the purchase of one-half of the certificates by the lessee, the assurance that the fixed rental will be paid is strengthened. It should be observed that, under the plan, none of the trustee's securities passes either to the lessee-debtor or to the unsecured creditors. The entire existing security of the trustee and the additional assets of the lessee not previously pledged become security for the performance of the new lessee's obligations under the new lease indenture.

As has been indicated, it is our judgment that, for concession of its strict legal rights, the trustee under the plan of reorganization of the lessee-debtor receives a fair and equitable consideration for execution of the new lease for the benefit of the beneficiaries of the trust. Accordingly, we affirm the order of the District Court entered March 6, 1945, confirming the Cleveland Hotel Reorganization Plan, from which this appeal is taken.