In re WEINTROB.

(District Court, E. D. North Carolina.   March 17, 1917.)

No. 567.

1. BANKRUPTCY ⬤⇒377—COMPOSITION—ACCEPTANCE BY CREDITORS.
   Votes, to accept an offered composition in bankruptcy of 25 per cent., cast by an assignee of a claim against a bankrupt, who paid the full face value of the claim shortly before the creditors' meeting, and by relatives of the bankrupt, who claimed for moneys loaned by them to him, should not be considered, where the bankrupt made no explanation for the purchase of the claim, or as to the circumstances of the loans, in determining the majority of creditors necessary to accept the composition under Bankr. Act July 1, 1898, c. 541, § 12d, 30 Stat. 549, as amended by Act June 25, 1910, c. 412, § 5, 36 Stat. 839 (Comp. St. 1913, § 9596), providing that the judge shall confirm a composition, if satisfied that the offer and its acceptance are in good faith, and have not been made or procured by any means, promises, or acts therein forbidden.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 586–588.]

2. BANKRUPTCY ⬤⇒384 — COMPOSITION — DENIAL — ACTS PREVENTING DISCHARGE.
   Under Bankr. Act, § 12d, as amended in 1910, authorizing the judge to confirm a composition with creditors, if the bankrupt has not been guilty of any acts which would bar his discharge, a composition will not be confirmed where, if a bankrupt's statements to sellers of merchandise were correct, a large amount of assets had disappeared, concerning which the bankrupt could give no explanation.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 590–592.]

In Bankruptcy. In the matter of Abe Weintrob, bankrupt. On exceptions to the referee's report on petition for confirmation of composition. Confirmation denied.

D. H. Gladstone and Bryant & Brogden, all of Durham, N. C., for bankrupt.

R. H. Sykes, D. W. Sorrell, and E. L. Tilley, all of Durham, N. C., for creditors.

CONNOR, District Judge. Abe Weintrob, trading under the firm name and style of A. Weintrob & Co., of Durham, N. C., filed his petition on December 2, 1916, submitting an offer of 25 per cent. to his creditors as a composition, before adjudication, as provided by section 12, amended by Act 1910, 36 Stat. 839, Fed. Stat. Anno. (2d Ed.) 543 (Comp. St. 1913, § 9596). He complied with the provisions of the statute, and, upon the hearing, at the meeting, 23 of his creditors filed proof of claims, which were allowed, aggregating $6,169.99; fifteen creditors, representing claims aggregating $3,377.12, voted to accept

the offer of composition; 8 creditors, representing claims aggregating $2,833.47, voted against acceptance; 8 creditors, representing $1,178.-13 scheduled, were not filed; 4 creditors, relatives of the bankrupt, holding claims aggregating $800, voted to accept the offer and filed waivers of their right to receive cash for the amount due them. Rosenstein deposited, for Weintrob, the amount necessary to pay the composition and costs. The referee recommended the confirmation of the composition.

John B. Ellison & Son, whose claim for $1,018.24 was allowed, objected to the confirmation, and filed several specifications as the ground of their objection. Among other things they charge: That, during the four months immediately preceding the date of making the offer of composition, the bankrupt purchased and received goods, wares, and merchandise to an amount largely in excess of the assets scheduled by him. That he made and signed to Bradstreet Mercantile Agency, on May 22, 1916, a statement in which he represented that his estate was of the value of $8,761.96, while his liabilities amounted to only $1,955.-32; that his goods and accounts inventoried $5,211.35. That on September 1, 1916, he made a statement, as a basis of credit, to Rose Bros., of New York, representing his assets to be $7,793.83 and his liabilities $2,061.37. He scheduled, on December 1, 1916, when making his offer of composition, his entire assets at $3,435 and his indebtedness as $7,013.58. That the petitioner procured, or advised, the purchase by L. Gladstein, Jr., of the claim, or debt, of Rose Bros., by paying to them the full amount thereof, and immediately thereafter said Gladstein voted to accept in settlement thereof 25 per cent. of said debt. That the petitioner kept no books of account, showing, or enabling his creditors to ascertain, the condition of his business or his true financial condition. That the composition is not for the best interest of the creditors.

Upon the filing of the report of the referee and the specifications, the cause was set for hearing, and, after notice to the petitioner and the objecting creditors, was heard at Raleigh, March 9, 1917; the parties being represented by counsel. The examination, taken before the referee, and oral evidence, was introduced on the hearing.

[1] The duty of the judge, upon the motion for confirmation, is prescribed by section 12d of the Bankruptcy Act (Collier [10th Ed.] page 283):

> "He shall confirm the composition, if satisfied that (1) it is for the best interest of the creditors; (2) the bankrupt has not been guilty of any of the acts, or failed to perform any of the duties, which would be a bar to his discharge; (3) and the offer and its acceptance are in good faith, and have not been made or procured except as herein provided, or by any means, promises or acts herein forbidden."

It will be convenient to consider the specifications in the reverse order.

It is charged that the petitioner made a written statement to Rose Bros., of New York, on September 1, 1916, in which he represented that his stock inventoried $4,879.36 and his total assets were $7,793.83, and his liabilities $2,061.34. He purchased, at that time, from Rose

Bros., goods to the amount of $297.50. They sent this claim, with the "statement" made by Weintrob, to an attorney in Durham, N. C., for collection. A short while before the date set for the meeting of the creditors, they instructed their attorney to deliver the account, with the "statement," to L. Gladstein, Jr., of Durham, who paid Rose Bros. by check the full amount thereof, and took, from them direct, an assignment of the claim. Gladstein voted the debt for acceptance of the offer of composition. The significance of this transaction is found in the fact that, to have a majority in amount of the claims proven and allowed, it was necessary that more than $3,084.99, being one-half of $6,169.99, the amount proved, should vote for acceptance. Without the claim of Rose Bros., the amount so voting was $3,079.62. It may be that this claim had a special interest, and value, because of the alleged "statement" attached to it. This "statement" has not been produced, nor has Gladstein been called upon to explain the inducement which moved him to purchase, at its full face value, a debt against a bankrupt for $297.50, and immediately go into a meeting of the creditors and vote to accept, in full satisfaction, 25 per cent. of the debt— thus throwing away $223.12. When Weintrob is asked about the transaction, he contents himself with a stereotyped answer, "I don't remember." The transaction calls for explanation. It does not appear that Gladstein is related to Weintrob by blood or marriage, or bears any other relation to him, explanatory of his voluntary loss of $223, under the circumstances. Without the favorable vote of this claim, the composition would, at that stage, have failed.

Three other claims occupy a rather unsatisfactory attitude, when sought to be used to compel the very large minority, and without them the majority, of his creditors to accept one-fourth of their debts in full satisfaction. L. Friedman, an uncle, residing in Washington City, proves for $100; J. Weintrob, father, Atlantic City, proves for $250; H. Weintrob, brother, Atlantic City, proves for $100; D. Weintrob, brother, Cambridge, Md., proves for $350. The bankrupt says that these amounts are due—borrowed money; there is a painful uncertainty in regard to the dates upon which the money was loaned; there does not appear to be any other evidence of the debts than the statements of the bankrupt and his kinsmen. They all generously vote to accept 25 per cent. of their debts and to release their claim to that small percentage. This they are entitled to do, but when their generosity is used to make up the majority, in number and amount, of the creditors, and thereby secure, against the consent of a majority, confirmation of the composition, the court should call for satisfactory proof of the validity of their debts, and the reasons why they so generously reduce them by 75 per cent. and then surrender the 25.

[2] Passing to the specification in regard to the alleged shrinkage in the property of the bankrupt, it appears that he is engaged in the business of a "merchandise tailor and clothing." He did business in Atlantic City 5 or 6 years, and went to Washington City, where he remained about 18 months, when he went to Durham, N. C., April 8, 1916, bringing his goods with him. He says that he does not remember the value of the goods which he brought when he took an

inventory—whether he made any statement about the middle of May, 1916. When asked in regard to his purchases, sales, receipts, and other pertinent questions, relating to his business, he consistently adheres to the answer, "I don't remember," with an occasional variation, "I don't know." Industrious counsel say that these answers were given to 121 questions. This state of mental negation does not satisfactorily explain a business career of 7 months, beginning, as he stated, with a substantial balance and ending in unsecured debts, aggregating $7,013.59, and "stock in trade, $2,500; fixtures, $460; debts due on open accounts, $450"—and a proposition to settle with his creditors by paying them 25 per cent. of the amount due them. His entire indebtedness was contracted during the year 1916, and, except $250 due the bank, about $300 due for advertising, and the amounts which he says he owes his kinsmen, $800, it is all for goods and merchandise. He had no fire or other disaster, nor were his expenses large. He says that, during the spring or summer of 1916, he had diamond rings worth $1,000, one of which he sold to his sister for $300, and the others he sold or pawned and received $300 for them, making $600. He made several trips to Atlantic City during the summer and early fall of 1916. What relation these trips bear to his insolvency does not appear; he says that he did not gamble. He has but little education. He says that he employed Mr. Crabtree, who kept such books as were found by the receiver. Mr. Crabtree was not examined. The inventory was properly and correctly taken by the receiver. There is no cause of complaint in respect to his action. It is difficult to resist, upon this record, the conclusion that the bankrupt would not be entitled to a discharge, if asking for it in a case which had gone through the usual course in bankruptcy. There is either an unexplained large shortage in his assets, or the statements made by him during the spring of 1916 were false. It is apparent, upon his schedule, that he purchased goods between April 18, 1916, when he went to Durham, and December 2, 1916, amounting to more than $5,000, and that, on the last date, his entire assets amount to $3,435. Without taking into account any goods which he brought from Richmond, this shows a shortage of $1,600.

It is suggested that the proceeds of the goods on hand, with such amounts as may be collected on open accounts, will pay more than 25 per cent. Of this I am doubtful. I am not certain that the creditors will get, from the estate, more than the percentage offered, if so much. I can form no conclusion whether, eliminating this question, it is for their best interest to accept the composition. I cannot forecast the future of the bankrupt. I do not think, upon the showing made, that the assignee of the Rose Bros. account should be permitted to vote, or rather that, in securing the requisite amount to secure an acceptance of the offer, this claim should be counted. It may be that the objection to it should have been lodged before the referee. There is in this claim, and probably in those of his kinsmen, a strong suspicion that the acceptance of the offer of composition has been obtained by means prohibited by the law. In Re Comstock (D. C.) 154 Fed. 747, Judge Brown says:

"It is clear that, if the bankrupt has been guilty of any of the acts which would be a bar to his discharge, the court is without power to confirm a composition, even if satisfied that it would be for the best interests of the creditors to do so." Collier on Bankruptcy (10th Ed.) 299.

I could not, in the light of the disclosures in this case, the persistent refusal of the bankrupt to give any explanation of conditions calling for explanation, which he should have been able to give, grant a discharge.

The motion for confirmation of the composition is denied. This will be certified, to the end that further proceedings may be had in accordance with law.