## In re McEWEN'S LAUNDRY, Inc.

## In re McEWEN et al.

## McEWEN et al. v. H. J. GRIMES & CO. et al.

## No. 7488.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1937.

J. O. Bass, of Nashville, Tenn. (Bass, Berry & Sims, of Nashville, Tenn., on the brief), for appellant.

Jay G. Stephenson and W. H. Levine, both of Nashville, Tenn. (Lee Douglas, Roberts, Roberts & McCall, and J. G. Stephenson, all of Nashville, Tenn., on the brief), for Lindsey.

Levine & Levine, of Nashville, Tenn., for Yarbrough.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

On December 21, 1934, five unsecured creditors of McEwen's Laundry, Inc. (herein called the debtor), with claims aggregating over $1,000 filed in the District Court their petition for corporate reorganization of the debtor under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The petition alleged, among other things, that the debtor had committed acts of bankruptcy in paying off certain of its creditors in full to the depletion of its as-

sets, and in permitting a judgment to be entered against it for $375 in the case of Athey v. Nashville Laundry Company, with which latter company it was merged. The petition further alleged that the assets of the debtor were of substantial value if its business were operated as a going concern; that all its tangible assets had been conveyed in trust to secure an indebtedness of $57,181.33, now in default; that if foreclosure proceedings were brought the assets would be insufficient to pay off the secured indebtedness and that the unsecured creditors and stockholders would therefore get nothing; that the earnings of the debtor since April, 1934, had shown improvement, though still insufficient to pay off the amounts due by the debtor. There was a further allegation that several hundred people employed by the debtor would be thrown out of work if some plan of reorganization were not worked out so the debtor might continue to operate.

The debtor answered, and while not conceding its insolvency, admitted the essential allegations of the petition, and by authority of its board of directors joined in the prayer for reorganization.

On December 22, 1934, the court entered an order sustaining the original petition. Thereunder the debtor was permitted to remain temporarily in possession of the properties and to operate its business, to make repairs, receive all income, and to meet necessary current expenses. It was directed to notify its creditors and stockholders of a hearing to be held on January 21, 1935, to determine if the debtor should continue in possession of the business. Creditors were enjoined from bringing any suits against the debtor until after final decree. There were other provisions in this order immaterial here.

Under this order, the creditors of the debtor were directed to file their claims on or before February 1, 1935, in order to participate in any plan of reorganization and all such claims were ordered to be deemed finally allowed on March 1, 1935, unless intervention was made by the debtor, other creditors or stockholders prior thereto. Objections to any claim were to be referred to a standing master for the production of proof and the filing of briefs.

This is the background of the present controversy.

On July 21, 1936, the Yarbrough Supply Company and H. J. Grimes & Co., alleging provable claims against the debtor, aggregating $14,686.97 of total unsecured claims of between $40,000 and $50,000 joined in a petition averring that E. A. Lindsey and Norman S. McEwen owned between them the entire capital stock of the debtor, that each of these stockholders had presented a plan for reorganization yet unacted upon; that there is no unity between the stockholders and that they are advised that proponents of each plan have purchased and had assigned to them certain claims of unsecured creditors for a consideration of 15 cents on the dollar, and that creditors, representing originally twice in the aggregate the combined amount of petitioners' claims, have in effect given up all their rights in the claims for fifteen cents on the dollar.

These petitioners characterized the general purchasing of claims at such heavy discount as speculative trafficking in the assets of the distressed debtor and aver that it would be unfair to the rights of bona fide creditors to permit such claimants greater voting power in the reorganization proceedings than the amounts actually paid by them for the claims.

The petitioners prayed:

"(2) That as to any unsecured claims attempted to be voted or to participate in the assets of this debtor in which the claim is not filed and owned by the original creditor but as by an assignee or alleged owner that the Court order an accounting be had and determine the consideration paid therefor.

"(3) That having determined the consideration paid for any assigned or sold claims the Court restrain the exercise of any power therefor, or thereby by limiting such claim to the actual consideration paid therefor as to all matters effecting" (sic) "the exercise of any power, right, authority or participation of any and all of said claims in these proceedings; and * * *" for general relief.

Petitioners invoked the action of the court in virtue of the so-called "scrutiny clause" of the reorganization act, to wit, subsection (b) section 207, title 11, U.S.C. (11 U.S.C.A. § 207 (b).[1]

[1] "Provided, That the judge shall scrutinize and may disregard any limitations or provisions of any depositary agreements, trust indentures, committee or other authorizations affecting any creditor acting under this section and may en-

874

Norman S. McEwen, a stockholder and an unsecured creditor, and L. B. Stevens, an unsecured creditor, joined in a motion to dismiss this petition in so far as it applied to claims held by them, on the ground that it was not shown: That the claims were not valid and provable; that they were affected by any depository agreement; that there was any fraud in connection with their purchase or assignment.

■ The court denied this motion to dismiss and we find no reversible error in this particular action. We need not determine whether it had the power to entertain the petition under the "scrutiny clause" for the bankruptcy court is a court of equity and it undoubtedly had such power under the broad principles of equity jurisprudence.

■ The order denying the motion to dismiss was made and entered on July 30, 1936, and in the order was a provision that "the said Norman S. McEwen and L. B. Stevens and all other interested parties are allowed until next Saturday, August 1, 1936, in which to file answers to said petition, * * *" but in the same order (July 30, 1936) the court without waiting for the incoming of the answer adjudged "that in the matter of voting upon a plan of reorganization of this corporation purchasers and assignees of claims of creditors against it shall be allowed to vote only the amount paid by them for such claims. * * *" This was in effect an adjudication of an important and material controversy between the petitioners and appellants McEwen and Stevens without an issue having been made upon it. It is a fundamental concept of equity procedure that adjudications must be based upon issues between the antagonists. Issues are created by pleadings upon which the parties have the right to introduce evidence. Without an issue there was nothing before the court to adjudicate, and the purported order on a nonexistent issue was invalid.

For this reason, so much of the order of July 30, 1936, limiting the right of assignees of creditors to vote as is quoted above, is set aside and the case remanded for further proceedings consistent herewith.

force an accounting thereunder or restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claims

filed by such committee member or agent, to the actual consideration paid therefor."