## AMERICAN UNITED MUTUAL LIFE INSURANCE CO. *v.* CITY OF AVON PARK, FLORIDA.

No. 31. Argued November 12, 1940.—Decided November 25, 1940.

139

140

*Mr. Giles J. Patterson* for petitioner.

*Mr. Robert J. Pleus* for respondent.

Mr. Justice Douglas delivered the opinion of the Court.

The District Court confirmed a plan for the composition of the debts of respondent under Ch. IX of the Bankruptcy Act (50 Stat. 653; 52 Stat. 939, 940).[1] The

---

[1] The Act of August 16, 1937 (50 Stat. 653) under which the petition was filed expired June 30, 1940, except in respect to proceedings initiated on or prior to that date. That Act, however, was amended by

Circuit Court of Appeals affirmed that order. 108 F. 2d
1010. Petitioner, a creditor of the city, having objected
to the confirmation in the courts below, brought the case
here on a petition for certiorari, which we granted in
view of the importance of the problems in the adminis-
tration of the composition and reorganization provisions
of the Act.

The city's composition was a refunding plan worked
out by it and its fiscal agent,[2] R. E. Crummer & Co.
Pursuant to the fiscal agency contract both parties were
to use their best efforts to induce the creditors to partici-
pate in the plan. The city was not to pay any of the
costs of the refunding, as Crummer was to defray all ex-
penses incident to assembling the bonds, printing the
refunding bonds, representing the city in proceedings to
validate the new bonds, obtaining a legal opinion approv-
ing the bonds, etc. The fiscal agency contract provided
that Crummer was to be compensated for its services and
reimbursed for its expenses by assessing charges against
the participating bondholders. This charge was $40 for
each $1000 bond; or in case the bondholders elected to
sell Crummer the interest coupons, accrued to July 1,
1937, at one-third of their face amount [3] the charge was
to be $20 per $1000 bond.

the Act of June 28, 1940 (76th Cong. 3d Sess., c. 438, 54 Stat. 667),
which, *inter alia,* extended for another two years the time for filing
petitions.

[2] R. E. Crummer & Co. is a Delaware corporation organized prima-
rily to represent clients of an affiliate (see *infra,* note 4) who had
purchased bonds in Florida. Beginning in 1931, it had handled the
debt problems of over 200 taxing units.

[3] Under the original plan all such accrued interest coupons were to
be acquired by Crummer at 33⅓% of the face amount, which when
refunded into new bonds, would be held by it subject to purchase by
the City at not exceeding 50% of the face thereof for the first six
months, 60% for the succeeding six months, 70% for the next six
months, and 75% for the following six months. Due to fears of

Crummer solicited assents to the plan. Approximately 69% of the bondholders accepted. But for the claims held by the Crummer interests,[4] and voted in favor of the plan, the requisite two-thirds statutory vote, however, would not have been obtained. Some of these claims had been purchased prior to the fiscal agency contract, some later. The average price was apparently about 50¢ on the dollar. The inference seems clear that some of them were acquired in order to facilitate consummation of the composition by placing them in friendly hands. But the record does not show whether or not Crummer disclosed to the bondholders when their assents were solicited that it was a creditor as well as the city's fiscal agent, the extent of the claims held by it and its affiliate, the circumstances surrounding their acquisi-

---

illegality, the plan was modified. As modified it provided that compensation of the fiscal agent was to be 4% of the principal debt with the right of any creditor to sell to Crummer the interest accruals at 33⅓% of their face amount. In the latter event the charge against him was reduced to 2% and Crummer held the securities so obtained subject to the right of the city to acquire them at the rates above indicated. The fiscal agent estimated that it would get substantially the same amount of money out of the plan whichever option the bondholders elected.

Interest accruals were to be escrowed. Proceeds of the collection of delinquent taxes were to be remitted to the escrow agent who would reduce the amount owed by the city under the escrow by such amount as would result in the particular proceeds constituting a *pro tanto* payment and discharge at 50% of par during the first six months, 60% during the next six months, 70% during the next six months, and 75% during the following six months.

Thus in effect the interest accruals could be offset against delinquent taxes, the city being able to retire some of its debt at less than par if it could stimulate tax collections. The proceeds received by the escrow agent were to be held for the benefit of the depositors.

[4] R. E. Crummer & Co. and Brown-Crummer Investment Co. R. E. Crummer was president of both. A majority of the boards of both corporations was identical. The Crummer interests had acquired over a third of the claims.

tion, and its intent to vote those claims in favor of the plan. No such disclosure was made in the plan.

The District Court, however, found that the two-thirds of the aggregate amount of claims affected by the plan, required by § 83 (d), 11 U. S. C. § 403 (d), for confirmation, had assented. It also found that Crummer's compensation was fair and reasonable, that the plan and its acceptance were in good faith, and that the plan was fair, equitable and for the best interests of the creditors, and did not discriminate unfairly in favor of any creditor.

We disagree. The order of confirmation must be set aside. It cannot be said that the plan does not discriminate unfairly in favor of any creditor, that the acceptances were in good faith, that the requisite two-thirds vote of approval had been obtained.

Crummer had at least[5] three financial stakes in this composition: (1) the fee to be collected from the bondholders; (2) its speculative position in such of the interest accruals as it might acquire from the bondholders at a third of their face amount; (3) the profit which might accrue to it or its affiliate, as a result of the refunding, on bonds acquired at default prices.

The court found that the first of these items was reasonable. But it apparently deemed the others irrelevant to the inquiry.

---

[5] There were other emoluments for Crummer. It was granted "exclusive authority" to act for and on behalf of the city for a period of three years "in all matters connected with, or relating to, the exchange." And in case any bonds or coupons were presented for payment or suit instituted thereon the city agreed to give Crummer notice before any terms of settlement were agreed upon. These provisions, the fact that the Crummer interests hold large blocks of claims acquired at default prices, the likely interest of Crummer in the accrued coupons and its strategic position all point towards future speculative possibilities which are not inconsiderable, whatever may be said of their unhealthy impact on the city and the public investors alike.

Clearly, however, no finding could be made under § 83 (b), 11 U. S. C. § 403 (b), that the compensation to be received by the fiscal agent was reasonable without passing on the worth of the aggregate of all the emoluments accruing to the Crummer interests as a result of consummation of the plan. Since that inquiry would necessitate an appraisal of the fiscal agent's speculative position in the plan, perhaps the definitive finding demanded by the Act could not be made. Yet that is a chance which the fiscal agent, not the bondholders, must take; for it is the agent who is seeking the aid of the court in obtaining one of the benefits of the Act. Moreover, to the extent that the aggregate benefits flowing to the Crummer interests exceeded reasonable compensation for services rendered, their reward would exceed what the court could authorize under § 83 (b), 11 U. S. C. § 403 (b). Furthermore, if any such excess benefits would accrue to them, then the plan would run afoul of § 83 (e) (1), 11 U. S. C. § 403 (e) (1). For in that event the plan would discriminate unfairly in favor of the Crummer interests as creditors.

Hence the lack of that essential finding would be fatal in any case. It is especially serious here in view of the fact that without the vote of the fiscal agent the requisite two-thirds acceptance would not have been obtained. Where it does not affirmatively appear that full and complete disclosure of the fiscal agent's interests was made to the bondholders when their assents were solicited, it cannot be said that those assents were fairly obtained. Cf. *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123, 143. And where without such disclosure the fiscal agent's vote was cast for acceptance of the plan, it cannot be said that such acceptance was in "good faith" within the meaning of § 83 (e) (5), 11 U. S. C. § 403 (e) (5). Here the fiscal agent was acting in a dual capacity. While

it was representing the city, it likewise purported to represent the interests of bondholders. The very minimum requirement for fair dealing was the elementary obligation of full disclosure of all its interests. And the burden was on it to show at least that such disclosure was made. Equity and good conscience obviously will not permit a finding that an acceptance of a plan by a person acting in a representative capacity is in "good faith" where that person is obtaining an undisclosed benefit from the plan.

We have emphasized that full disclosure is the minimum requirement in order not to imply that it is the limit of the power and duty of the bankruptcy court in these situations. As this Court stated in *Securities and Exchange Commission* v. *United States Realty & Improvement Co.,* 310 U. S. 434, 455: "A bankruptcy court is a court of equity, § 2, 11 U. S. C. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act. . . . A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest." And see *Pepper* v. *Litton,* 308 U. S. 295, 304, *et seq.* These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization, and the obtaining of assents thereto. As we said in *Case* v. *Los Angeles Lumber Products Co.,* 308 U. S. 106, 114, "The court is not merely a ministerial register of the vote of the several classes of security holders." The responsibility of the court entails scrutiny of the circumstances surrounding the acceptances, the special or ulterior motives which may have induced them, the time of acquiring the claims so voting, the amount paid therefor, and the like. See *Continental Insurance Co.* v.

*Louisiana Oil Refining Corp.,* 89 F. 2d 333. Only after such investigation can the court exercise the "informed, independent judgment" (*National Surety Co.* v. *Coriell,* 289 U. S. 426, 436; *Case* v. *Los Angeles Lumber Products Co., supra,* p. 115) which is an essential prerequisite for confirmation of a plan. And that is true whether the assents to the plan have been obtained prior to the filing of the petition or subsequently thereto. Where such investigation discloses the existence of unfair dealing, a breach of fiduciary obligations, profiting from a trust, special benefits for the reorganizers, or the need for protection of investors against an inside few, or of one class of investors from the encroachments of another, the court has ample power to adjust the remedy to meet the need. The requirement of full, unequivocal disclosure; the limitation of the vote to the amount paid for the securities (*In re McEwen's Laundry, Inc.,* 90 F. 2d 872); the separate classification of claimants (see *First National Bank* v. *Poland Union,* 109 F. 2d 54, 55); the complete subordination of some claims (*Taylor* v. *Standard Gas & Electric Co.,* 306 U. S. 307; *Pepper* v. *Litton, supra*), indicate the range and type of the power which a court of bankruptcy may exercise in these proceedings. That power is ample for the exigencies of varying situations. It is not dependent on express statutory provisions. It inheres in the jurisdiction of a court of bankruptcy. The necessity for its exercise (*Pepper* v. *Litton, supra,* p. 308) is based on the responsibility of the court before entering an order of confirmation to be satisfied that the plan in its practical incidence embodies a fair and equitable bargain openly arrived at and devoid of overreaching, however subtle. Neglect of that duty is apparent here by inclusion of the vote of the claims held by the Crummer interests in computing the requisite statutory assents, without protection of the public investors through the

requirement of full disclosure and of other appropriate safeguards. By the same token allowance of compensation to Crummer without scrutiny of Crummer's speculation in the securities does not comport with the standards for surveillance required of courts of bankruptcy before confirming plans of composition or reorganization or before making such allowances. The scope of the power of the court embraces denial of compensation to those who have purchased or sold securities during or in contemplation of the proceedings. As in case of reorganizations under former § 77B, the provision in § 83 (b), 11 U. S. C. § 403 (b), for allowance of "reasonable compensation" for "services rendered" necessarily implies "loyal and disinterested service in the interest of the persons" for whom the claimant purported to act. *In re Paramount-Publix Corp.*, 12 F. Supp. 823, 828.

Beyond that is the question of unfair discrimination to which we have adverted. Compositions under Ch. IX, like compositions under the old § 12, envisage equality of treatment of creditors. Under that section and its antecedents, a composition would not be confirmed where one creditor was obtaining some special favor or inducement not accorded the others, whether that consideration moved from the debtor or from another. *In re Sawyer,* Fed. Cas. No. 12,395; *In re Weintrob,* 240 F. 532; *In re M. & H. Gordon,* 245 F. 905. As stated by Judge Lowell in *In re Sawyer, supra,* "if a vote is influenced by the expectation of advantage, though without any positive promise, it cannot be considered an honest and unbiased vote." That rule of compositions is but part of the general rule of "equality between creditors" (*Clarke* v. *Rogers,* 228 U. S. 534, 548) applicable in all bankruptcy proceedings. That principle has been imbedded by Congress in Ch. IX by the express provision against unfair discrimination. That principle as applied

to this case necessitates a reversal. In absence of a finding that the aggregate emoluments receivable by the Crummer interests were reasonable, measured by the services rendered, it cannot be said that the consideration accruing to them, under or as a consequence of the adoption of the plan, likewise accrued to all other creditors of the same class. Accordingly, the imprimatur of the federal court should not have been placed on this plan. The fact that the vast majority of security holders may have approved a plan is not the test of whether that plan satisfies the statutory standard. The former is not a substitute for the latter. They are independent. See *Case* v. *Los Angeles Lumber Products Co., supra,* pp. 114–115.

Since the cause must be remanded, there are two other matters which should be mentioned. Section 83 (d), 11 U. S. C. § 403 (d), provides that in computing the statutory two-thirds vote necessary for confirmation of a plan all claims "owned, held, or controlled" by the city shall be excluded. So far as appears, the claims held by the Crummer interests were not owned by or held for the city. Yet it is by no means clear that they were not "controlled" by the city within the meaning of the Act. Claims held by a city's fiscal agent presumptively would seem to fall in that prohibited category. The abuse at which the Act is aimed is not confined to those cases where the holder of the claims is an agent of the city within the strict rules of *respondeat superior.* Rather, the test is whether or not there is such close identity of interests between the claimant and the city that the claimant's assent to the plan may fairly be said to be more the product of the city's influence and to reflect more the city's desires than an expression of an investor's independent, business judgment. Here there was such a close identity of interests between Crummer and the city

*vis-à-vis* the refunding as to raise grave doubts as to the propriety of allowing those claims to vote in any event. That, however, is a question for appropriate findings by the court should another plan be presented.

Petitioner also urges that the fiscal agency contract between Crummer and the city was illegal under the decisions of the Supreme Court of Florida in *Taylor* v. *Williams,* 142 Fla. 402, 562, 756; 195 So. 175, 181, 184; 196 So. 214, and *W. J. Howey Co.* v. *Williams,* 142 Fla. 415, 562, 756; 195 So. 181, 184; 196 So. 214. Under § 83 (e) (6), 11 U. S. C. § 403 (e) (6), the court must be satisfied that the city "is authorized by law to take all action necessary to be taken by it to carry out the plan" before it may enter a decree of confirmation. Plainly that finding could not be made if it was clear, for example, that a taxpayer could enjoin the issuance of the new bonds or the levy of assessments therefor. The courts below did not pass on the applicability of these recent Florida decisions to this fiscal agency contract, since they were decided after the Circuit Court of Appeals affirmed the order of confirmation. Nor do we undertake to decide the question, in view of our disposition of the case. It is, however, a relevant inquiry to be made by the District Court as, if and when another plan of composition is presented, which directly or indirectly involves any such fiscal agency contract.

For the reasons stated we reverse the judgment below and remand the cause to the District Court for proceedings in conformity with this opinion.

*Reversed.*