WARE et al. v. R. E. CRUMMER & CO. et al.

R. E. CRUMMER & CO. v. BARNETT BANK OF AVON PARK et al.

No. 10195.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1942.

Wallace E. Davis, of Orlando, Fla., for appellants E. H. Ware et al., individually and as Commissioners of City of Avon Park, Florida, debtor.

Joseph P. Lea, Jr., and R. J. Pleus, both of Orlando, Fla., for R. E. Crummer & Co. et al., appellees.

F. P. Fleming, of Jacksonville, Fla., for Barnett Bank of Avon Park and M. V. Pilcher, appellees.

Merton S. Horrell, of Orlando, Fla., for City of Avon Park, Fla.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The order appealed from was entered in the composition proceedings[1] the City of Avon Park had filed on August 15, 1938.[2] By it appellants were, on December 1, 1941, summarily ordered to replace in the interest and sinking fund of the city, the sum of $65,715.20, which had been collected by a tax[3] for the establishment of the sinking fund for the payment of principal and interest on the City of Avon Park, Florida, refunding bonds, issue of 1937. This order was issued under these circumstances. After the issuance on December 31, 1940, of the mandate of the Supreme Court, the district judge, on March 24, 1941, ordered the City of Avon Park, through its mayor, the commissioners, and the clerk, and all other custodians of official city records, involving moneys received or paid out, and R. E. Crummer & Company, fiscal agent of the city to appear before the court for the purpose of giving the court their respective views as to the further course the proceeding herein should take, and to submit verified statements[4] showing the condition of debt service funds of the city. It was further ordered "that jurisdiction of the case be retained for the purpose of making such orders as may appear appropriate after the facts have been made available."

Thereafter testimony was taken as to the status of the composition proceedings, as to whether another feasible plan could be submitted, and as to the withdrawal from the sinking fund, and use by the city council, for other purposes, of sums accumulated for the refunding bonds since the filing of the petition. The evidence showing that no feasible plan of composition could be proposed and carried out, and it showing too that the refunding plan having failed, the city council had withdrawn from the sinking fund, the moneys raised to service the refunding bonds under the plan, and had expended them in part for enlarging the facilities of the airport and in part for general municipal purposes, the district judge inquired what there was to be done. Whereupon Mr. Davis, representing the city, stated that the only thing the court could do, would be either to obtain an amended or modified plan of composition or dismiss the proceedings. "If there is not a plan offered by the city then the court can do nothing but dismiss the proceedings." Mr. Pleus representing Crummer & Company then said, "The question before the court is whether or not this court is going to protect its jurisdiction in bankruptcy to the very limit it can go toward rehabilitating the fund which has been dissipated while this court had jurisdiction of the fund, and it is our opinion that the court in protecting its bankruptcy jurisdiction and powers, should require whoever took the funds to restore them." Thereafter, on August 4, 1941, the district

---

[1] Chap. 10, Title 11 U.S.C.A. § 401 et seq.

[2] The city's composition was a refunding plan worked out by it and its fiscal agent, R. E. Crummer & Company. The district court entered an interlocutory decree confirming the plan. This court, American United Mutual Life Ins. Co. v. City of Avon Park, 108 F.2d 1010, affirmed. The Supreme Court, 311 U. S. 138, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860, finding the plan discriminatory in favor of Crummer & Company, and that the confirmation of it must be set aside, reversed the order and remanded the cause to the district court.

[3] This tax was collected under City Ordinance No. 228, enacted October 15, 1940, for the levying of a tax, "for the operation and conduct of the several departments and the payment of the operating expenses, and for the payment of the debt service of the city and for other purposes." The tax for debt service was levied "for the establishment of a sinking fund for the payment of principal and interest on the City of Avon Park, Florida, refunding bonds, issue of 1937, in accordance with the resolution of December 14, 1937, authorizing the issuance of said refunding bonds which said taxes, when collected shall be deposited in a special fund and distributed for the purpose above mentioned and for no other purpose."

[4] Showing: (1) The amount of moneys in each separate debt service as of the date of the filing of the petition; (2) a statement of all collections on account thereof received subsequent thereto; (3) a statement of all disbursements made from the debt service funds; (4) a statement of cash balances therein.

judge issued a show cause order[5] returnable September 15, 1941, to appellants, the present city commissioners, the prior city commissioners, the contractor for the airport and his surety, the Barnett Bank and the City of Avon Park.

Appearing to this order appellants and the city answered that upon the coming down of the mandate of the Supreme Court, the court had no further duty in the premises except to dismiss the cause, and that unable to devise any plan to substitute for the one which was rejected, the commissioners and the city, in the exercise of its and their governmental powers, had deemed it right and proper, the plan having failed, to expend the sums, which had been collected solely for the refunding bonds if the plan should be approved, and they did expend them in the interest of the city and its people. They further answered that the plan did not require or contemplate that they should be deposited in or with the court, and no order was at any time entered by the court with respect to them until after the plan had failed and that the plan, not having gone beyond the interlocutory stage, they were never in the custody of the court but always in the custody of the city in its governmental capacity and in the management of its fiscal affairs. There was a further answer that all of the moneys in question had been expended either on the improvement of the airport or for the necessary operating expenses of the city, that the commissioners have never had and neither they nor the city have now, any of said moneys.

The Barnett Bank answered, denying that the funds were in custodia legis, denying that it at any time conspired with the city or its officials, and alleging that it had done nothing with the funds on deposit with it except to pay them over to the city on the check of its proper officers. The hearing concluded, the district judge, on December 1, 1941, entered the order appealed from. This order exonerated the bank from the charges of conspiracy and misapplication of funds, and discharged it from the rule, ordered the appellants to pay the $65,715.20, discharged all of the others cited except the prior city commissioner as to whom decision was postponed, and the City of Avon Park, as to whom no order was made.

Here appellants, urging that the moneys in question were not in custodia legis but were in the control of the city and its officers and that the plan for the issuing of

---

[5] The order recited that it appeared from the testimony that there had been a wrongful diversion of debt service fund monies; that of such diversion, a part of it was expended upon an airport owned and established by the city in its proprietary capacity; that the monies involved and diverted were assets and resources of the bankrupt municipality which had come within the jurisdiction of the court and which were in custodia legis and that the court has power and authority to require the replacement of the funds. It was therefore ordered that appellants, the bank, appellee under the appeal of Crummer & Company, and the others named above, show cause why they should not return to the sinking fund the monies they were responsible for diverting, that the city show cause why it should not sell the airport and put the proceeds of the sale in the sinking fund, and that the city officials show cause why they should not be punished for contempt. And it was further provided:

"11. That all injunctive orders heretofore entered in any manner enjoining or restraining suits or actions against the petitioner on account of securities affected by the Plan, or to enforce any such securities or judgments obtained thereon, be and the same are hereby dissolved, and shall be of no further force or effect; nor shall the continued pendency of these proceedings in any manner preclude the filing or prosecution of any such suits, actions or enforcement proceedings: Provided, however, that jurisdiction is hereby specifically retained over all present monies in the debt service fund accounts of the City of Avon Park, and any monies which may be placed therein as a result of compliance with future orders of the court in this case, and any debt service tax collections realized before the end of the present fiscal year; and the court will, at the proper time and after notice to creditors, enter its order providing for an equitable disposition of such funds; and said funds now on hand, or to be so replaced or realized, as aforesaid, shall in no manner be the subject of any suit or action to enforce any securities affected by the Plan of Composition herein, or judgments obtained thereon.

"12. That this cause is hereby continued as a pending proceeding, and this court specifically retains jurisdiction for the purpose of entering any and all orders that may appear to be necessary hereafter."

the refunding bonds having failed, they were lawfully expended under the authority of section 1,[6] Chapter 15907, Acts of 1933, insist that the judgment against them should be reversed. Crummer & Company, on its part, urging that the diverted funds were in custodia legis, that the invoked statute is without application, and that the Barnett Bank, in permitting appellants to withdraw the funds from the sinking fund deposit, were liable as for conversion of them, insists that the judgment, as to appellants, should be affirmed and that on its cross appeal the judgment as to the Barnett Bank should be reversed.

We do not think so. In Leco Properties v. Crummer, 128 F.2d 110, this day decided, we have pointed out the nature and extent of, and the limitations upon, the jurisdiction of the court of bankruptcy in a municipal composition proceeding. Here, unlike there, the city not only is not consenting, after the failure of the plan, to the exercise of jurisdiction over its funds, but is resisting and denying that jurisdiction. Here, unlike there, instead of the order of the court distributing, with the consent of the city, moneys gathered into the debt service funds, since the filing of the petition and still there, the order of the court seeks to call the city and its duly elected officers to account as to, and to control the exercise of, the fiscal affairs and governmental functions of the city.

In the Bekins case, United States v. Bekins, 304 U.S. 27, 50, 58 S.Ct. 811, 815, 82 L.Ed. 1137, the Supreme Court construed Section 403, under which this petition was filed, as not operating to restrict the city's control over its fiscal affairs, but as leaving it "free to manage [its] own affairs." The show cause order directed the city to show cause why it should not sell part of its municipal property and place the proceeds in the custody of the court, and, while no summary order has been entered on this portion of the show cause order, the summary order appealed from, held the city officers personally accountable for the city's moneys spent on the city's behalf, and thus undertook drastically to control and direct the actions of the city and its officers in regard to its fiscal affairs. We think that this will not at all do. In the first place there is much to be said for appellants' contention that the use they made of the funds was justified under the Florida statute they invoke. Without, however, undertaking to determine that, we think it plain that the bankruptcy court was without jurisdiction to enter the order complained of. The funds in question had not been deposited in, or otherwise brought into the actual custody of, the court. They had been collected under a tax levy for the sole purpose of establishing a sinking fund for the payment of principal and interest on the refunding bonds provided for in the plan, and if the plan had been carried through, these funds and the refunding bonds would, under the statute, have been deposited with the court or such disbursing agent as the court might appoint or otherwise made available to the creditors, and the city would have received a discharge from the debts which the refunding bonds were issued to take up. The plan failing, these funds, collected and deposited in a special fund for taking care of the refunding bonds under the plan and for no other purpose, were no longer subject to the proposal of the plan but were freed therefrom, and were, thereafter, subject exclusively to the city's control under applicable Florida law. Whatever accountability therefore, the appellants may be under to the city for their use of the funds, as its officers on its behalf, that accountability was not to the court of bankruptcy or to be settled in a summary proceeding therein.

It follows therefore that the order is affirmed as to the appeal of R. E. Crummer and Co., and reversed on the appeal of appellants, Ware and others, with directions to discharge the appellants and the city from the rule.

Affirmed in part and reversed in part.

[6] "Section 1. All funds heretofore or hereafter raised or created by any county or taxing district for the purpose of applying toward the payment of interest or principal of refunding bonds of such county or taxing district, when such refunding bonds are not issued and such funds not otherwise lawfully disposed of shall revert back to the county or special taxing district to be used by the governing body or board of such county or taxing district for such general and lawful purposes of the county or taxing district raising such funds as in the judgment and discretion of such governing body or board shall seem to the best interest of the county or taxing district."