BADENHAUSEN et al. v. BAETJER et al.

No. 5299.

Circuit Court of Appeals, Fourth Circuit.

Jan. 3, 1945.

Abraham Mitnovetz, of New York City (Harry O. Levin, of Baltimore, Md., on the brief), for appellants.

Hunter H. Moss and Joseph France, both of Baltimore, Md. (Venable, Baetjer & Howard, of Baltimore, Md., on the brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and HARRY E. WATKINS, District Judge.

SOPER, Circuit Judge.

The Badenhausen Committee, one of the appellants in this case, was authorized by the Interstate Commerce Commission on August 23, 1943, pursuant to § 77, sub. p, of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. p, to solicit from holders of the Georgia and Alabama Railway first mortgage bonds authorizations to represent them in the consummation of a plan for the reorganization of the Seaboard Air Line Railway Company proposed in an equity proceeding in the District Court. On November 1, 1943, the Committee and Lester Martin, the other appellant herein, petitioned the District Court to order the Underlying Bondholders' Protective Committee, which had been acting throughout the proceeding on behalf of holders of underlying bonds, to cease to represent and act for Georgia and Alabama bondholders and to show cause why the Georgia and Alabama bonds deposited with it should not be with-

drawn. The District Court, after hearing, denied the petition and this appeal followed.

The Badenhausen Committee and Martin came into the case at a late date. The Seaboard Air Line Railway Company has been in receivership since December 23, 1930, as will appear from the decision of this court in Badenhausen, &c. v. Guaranty Trust Co., 4 Cir., 145 F.2d 40, in which a decree of the District Court approving a plan of reorganization was affirmed when brought before us by the Badenhausen Committee and one other appellant. The secured debt of the Seaboard Air Line system on January 1, 1943, was $340,251,484.-64, including ten separate underlying divisional mortgages in the sum of $48,549,-767.20, four general mortgages in the sum of $160,439,473.33, as well as collateral trust and other obligations. Amongst the underlying mortgages was the Georgia and Alabama mortgage, amounting to $6,085,000. The Underlying Bondholders Committee was created by a deposit agreement of August 1, 1931, to represent the ten underlying divisional mortgages. It holds on deposit more than fifty per cent of the outstanding Georgia and Alabama issue. The Georgia and Alabama bondholders have the largest representation of all of the underlying mortgages in the membership of the Committee.

The plan of reorganization finally adopted was well on the way when the Badenhausen Committee and Martin appeared on the scene. On July 6, 1942, the Underlying Committee proposed a plan of reorganization and mailed it to all the depositors. The plan received wide publicity. Subsequently, the chairman of the Badenhausen Committee and Martin acquired certain interests. Badenhausen bought $5000 Georgia and Alabama bonds on December 29, 1942, and $2000 on June 12, 1943. Martin owns certificates of deposit of Georgia and Alabama bonds with the Underlying Committee in the sum of $321,-000, which were registered on April 5, 1943. The Badenhausen Committee also claims to represent by proxy bonds approximating $671,000.

The plan finally adopted by the District Court with modifications was proposed on July 20, 1943, by a special master after numerous hearings and prolonged study of the plan offered by the Underlying Committee and a plan offered by the representatives of one of the general mortgages. The master's plan was considered by the District Court after hearings held in October, November and December, 1943, and adopted with modifications. In the proceedings in the District Court the Badenhausen Committee took an active part and later bore the chief burden of the appeal in this court. Every argument in favor of better treatment to the holders of the Georgia and Alabama bonds and every complaint of discrimination against them were carefully considered in the trial court and in this court, and were found to be without merit.

This is the situation which now confronts us. This appeal is based on the proposition that since the new capitalization of $196,870,000, provided by the plan, is less than the amount of the underlying mortgages, none of them can be paid in full. A conflict of interests therefore exists between the various issues and a single Underlying Committee is not competent to represent them all but each divisional mortgage should have its own separate representative. This conflict of interest, it is said, became especially clear in the formulation of the plan when the Georgia and Alabama Railway was classified as a deficit line and it became necessary for the experts to devise a formula and to select a test period of operations in order to determine the relative value of the component parts of the system.

The appellants point to reports and regulations of the Security & Exchange Commission* in which the rule is laid down that save in rare instances, a protective committee in a reorganization proceeding should represent but one class of securities to whose interests it should have an undivided loyalty. Similar views, express or implied, appear in the decisions of the Supreme Court. Woods v. City Nat'l Bank, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820, and American United Mutual Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860, are also referred to. The matter is now regulated, so far as railroad reorganizations are concerned, by § 77, sub. p, of the Bankruptcy

* See report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees made pursuant to § 211 of the Securities and Exchange Act of 1934, part 2, p. 395 (48 Stat. 909); General Rules and Regulations of the Securities & Exchange Commission, Rule U-62(j).

Act, 11 U.S.C.A. 205, sub. p, wherein solicitation of proxies or authorizations from security holders is prohibited until authorized by the Interstate Commerce Commission. This section by its terms is not applicable to any person or committee like the Underlying Committee in this case, which began the solicitation and use of proxies or authorizations in a railroad reorganization prior to August 27, 1935. But even in such a case, as the appellants point out, it is the duty of the judge to scrutinize and disregard any provision of any deposit agreement or authorization, and to restrain the exercise of any power, which he finds to be unfair or not consistent with public policy.

The force and effect of these regulations cannot be denied; nor can the propriety of the underlying principles be questioned. The difficulty is to perceive their relevancy to the facts of the pending case, or the importance or necessity of discharging the Underlying Committee whose work has been nearly finished and has been approved by the District Court and by this court on appeal. Joint representation of several classes of securities by a single committee has not been uncommon in railroad reorganization. Examples may be found in Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co., 318 U.S. 523, 63 S. Ct. 727, 87 L.Ed. 959; In re Chicago, M., St. P. & P. R. Co., D.C., 36 F.Supp. 193, 196; Chicago, M., St. P. & P. R. Co. Reorganization, 239 I.C.C. 485, 513; New York, N. H. & Hartford Ry. Co. Reorganization, 247 I.C.C. 677, 702; Denver & Rio Grande Reorganization, 233 I.C.C. 515, 540. In the pending case, it was well known to all participants that the Underlying Committee would represent all ten of the underlying issues, and this action was deliberately taken since it enabled the holders of the first liens to present a united front in all contests that might arise with junior lienholders. Some advantages were in fact derived from the unified representation. In 1935 it was proposed to issue $24,000,000 of receivers' certificates which should be treated as a first lien upon the properties superior to all underlying issues. It was of undoubted value to the Georgia and Alabama deficit line that the Underlying Committee was able to defeat this proposal and to maintain the first lien position of the mortgages which it represented. Again the activities of the Underlying Committee were advantageous to the underlying issues when a contest arose between them as a group and the holders of various junior securities.

■ It is not claimed that the Underlying Committee has been guilty of any concealment or intentional wrongdoing. On the contrary, it was conceded in the argument of this appeal that the Committee has not been actuated by improper motives and has not displayed intentional discrimination or favoritism. The difficulty of complete impartiality by a committee, which represents conflicting interest, should not be minimized, but in this case it has been judicially determined, after a searching investigation to which the plan has been subjected by the Badenhausen Committee and other interests, that no harm has been done to the Georgia and Alabama bondholders. Nor is there danger that any harm will come to them in the future from the joint representation of the Underlying Committee. The plan of reorganization has been approved and little remains to be done except that the court must fix an upset price for each of the several properties covered by the underlying mortgages which must be foreclosed. It has not been shown that the retention by the Committee of the Georgia and Alabama bonds will prevent the determination of a fair upset price for the Georgia and Alabama Railway, especially as the relative values of the component parts of the Seaboard system have already been determined and the interested parties will have full opportunity to participate in the subsequent proceedings. We find nothing in the actions of the Underlying Committee in the past and nothing in its possible actions in the future to justify the relief prayed.

■ There is another reason why the petition of the Badenhausen Committee and of Martin should be denied. They ask that the Georgia and Alabama bonds be withdrawn from the Underlying Committee unconditionally and without sharing the expenses to which the holders of other underlying issues will be subjected. The agreement under which the underlying bonds were deposited provided for the right of withdrawal by depositors upon payment of a pro rata share of expenses as limited by the terms of the contract. On August 1, 1943, when the petition under consideration was filed, the accrued charges, to which no objection has been lodged, amounted to $18.25 per bond. This charge is a lien on the bonds deposited with the Committee and reduces their market price.

The price at which Martin acquired the certificates of deposit now held by him must have been affected by this circumstance, and if he is now permitted to withdraw the bonds and relieve them of the liability for past expenses, he will be unjustly enriched.

The appellants are entitled to full and fair consideration of the claims of the Georgia and Alabama bondholders in the reorganization proceeding even though they have come into the case at a comparatively late date and have offered no evidence either in the hearings upon the adoption of the plan or in the hearing upon the petion now before us. But this consideration has been accorded them and they have no right to anything more.

The order of the District Court will be affirmed.