**In re MOIR HOTEL CO.**

**TRAINOR et al. v. MORRISON HOTEL CORP. et al.**

**No. 10286.**

United States Court of Appeals Seventh Circuit.

Dec. 21, 1950.

Rehearing Denied Jan. 16, 1951.

Meyer Abrams, Chicago, Ill., Shulman, Shulman & Abrams, Chicago, Ill., of counsel, for appellants.

John B. Heinemann, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and KERNER and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

In the debtor proceeding of the Moir Hotel Company, two orders from which this appeal was taken were entered on October 23, 1950. That proceeding was initiated by voluntary petition filed in 1934, under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. A plan of reorganization was confirmed by the court December 20, 1937, providing for the organization of a new corporation, the Morrison Hotel Corporation.

Because of the unusual complexity of the financial structure and burdens, provision was made in the confirmation order for withholding distribution of the securities of the new corporation until certain of the most pressing obligations had been discharged. Hence the decree provided for delivery of the income mortgage bonds and trust deed of the new corporation to a

depositary which was not to deliver the securities to the claimants and creditors of the debtor until all the general real estate taxes for the tax years 1937 and prior years had been discharged. The capital stock was to be issued to and in the names of two Permanent Trustees who were to deliver the stock certificate to the same depositary to be held by it until the court was satisfied that the taxes had been fully paid and entered its order directing transfer of the shares to the creditors, stockholders and claimants entitled to it. The order further provided:

"* * * During the time the said shares are held by the Depositary, the Permanent Trustees shall vote the same at any meeting of the shareholders of the new corporation. * * *

"The Permanent Trustees * * * shall continue to act as such Permanent Trustees only for the purpose of voting such shares of stock until the distribution of said securities to the creditors, claimants and stockholders entitled thereto has been authorized by the further order of this court, and in voting said shares of capital stock at any meeting of the shareholders of the new corporation the said Trustees shall be subject to the further order and direction of this court, so that pending the final consummation of the Modified Plan of Reorganization this Court shall at all times have jurisdiction of all property and assets of the new corporation, and control and direction of all its acts and doings."

The bonds of the new corporation, on a showing that all defaults in ground rents and back taxes had been discharged, were distributed in 1944. However, distribution of the capital stock was deferred further because of a question as to the proper apportionment of it between the various claimants, particularly those having claims against a wholly owned subsidiary of the debtor which had been dissolved more than two years earlier. In 1948 the parties arrived at a compromise settlement of these claims, providing for the allocation of a block of 16,717 shares to cover them. By order entered on May 19, 1948, the court directed the permanent trustees to proceed to the distribution of the stock to the various claimants with the exception of the 16,717 shares. It provided, however, that the permanent trustees should continue to vote all shares remaining undistributed. No appeal was taken from this order.

With respect to the 16,717 shares, instead of distributing these directly to the claimants, the order provided for the creation of a Liquidation Trust to hold and dispose of them as a block, in accordance with the terms of a supplemental agreement to be executed. The purpose of this arrangement was that these creditors might have "such protection, benefit and advantage as may arise from having a considerable block of stock of the Morrison Hotel Corporation held intact and disposed of as a unit." Accordingly the Hartford Liquidation Trust was created, having as its stated object the "sale and liquidation of the trust property * * * and the distribution of the net proceeds thereof as soon as may be practical to the registered holders and owners of the certificates of beneficial interest." These certificates recited that they represented a proportionate interest in the net income, proceeds and avails of the liquidation trust and that it was expressly agreed that the holder had no claim or interest, legal or equitable, in any of the property covered by or referred to in the trust agreement. The agreement further provided for termination of the trust in 5 years if not sooner; that the trustees should sell all the trust property as soon as expedient, but that they should not sell prior to termination without notice to the certificate holders or if more that 33⅓% objected to the proposed sale; and that after the entire outstanding bond issue of the Morrison Hotel Corporation had been paid or otherwise liquidated, the trust might be terminated at any time upon the written direction of the holders of 66⅔% of the units of beneficial interest upon lodging such written direction with one of the liquidation trustees.

The present controversy arose over a petition filed by appellants on October 20, 1950. One appellant owns one $250 bond and five shares received in exchange for one $500 bond of the original $6,000,000 issue of the debtor; the other appellants are

the owners of a minority of the stock in the Morrison Hotel Corporation and about a third of the shares of beneficial interest in the Hartford Trust, all of which shares, counsel for appellants stated in colloquy, had been acquired in March 1950. By their petition appellants prayed:

1. That the Hartford Liquidation Trustees be restrained, until the further order of the court, from voting at the annual meeting of the Morrison Hotel Corporation on October 26, 1950;

2. That the Morrison Hotel Corporation, its officers and directors be restrained from holding its election until further order of the court and that it be directed to continue the election for at least 30 days or such other time as the court might fix;

3. That the Permanent Trustees of the corporation be restrained from voting on behalf of the undistributed shares;

4. That the Permanent Trustees be discharged, that a barring order be entered, and a final decree closing the estate of the debtor be entered forthwith;

5. That the depositary be directed to make available to the petitioners the names and addresses of the persons entitled to the distribution of the trust units of the Hartford Trust.

This petition was set for hearing on October 23, 1950, and on that day the permanent trustees filed their petition for leave to vote the 6,182 shares remaining undistributed for the slate they recommended to the court. Upon hearing, appellees, who are the Morrison Hotel Corporation, the trustees of the Hartford Trust, and the permanent trustees of the debtor, denied the right of appellants to be heard at all, for failure of their counsel to file a statement which appellees contended was required by § 210 of the Bankruptcy Act, 11 U.S.C.A. § 610. For that, and other reasons, the court denied appellants' petition in its entirety; the motion of the permanent trustees for a direction to vote the undistributed stock was granted. From both these orders this appeal was taken.

Insofar as the action of the court was based on failure of counsel to comply with § 210, we think it was clearly erroneous. The debtor proceeding had progressed to the stage of confirmation of the plan of reorganization almost nine months before the effective date of § 210, and while § 276 of the Chandler Act, 11 U.S. C.A. § 676, does provide for its application in certain pending proceedings, we find no authority for applying it under the circumstances of this case, particularly in view of the fact that counsel had been a participant in the proceedings from its early stages, representing, among others, one of the appellants here. However, since the action of the court was based on other, and more tenable, grounds, its error in this respect does not warrant reversal.

Appellants contend that the order with respect to the voting of the 6,182 shares was erroneous for the reason that the court had no further jurisdiction over the undistributed shares after its order of May 19, 1948, directing distribution. They refer to the provision of the 1937 confirmation order that the permanent trustees should continue to act as such only for the purpose of voting such shares until distribution "has been authorized by the further order of this court," contending that upon the entry of the order of distribution the court lost all further jurisdiction over the stock, hence that that portion of its order of May 19, 1948, directing the trustees to continue to vote the undistributed shares, was wholly void. We think that such literal construction of that portion of the 1937 order is unwarranted. The reason for the deposit of shares with provision for their voting by the trustees appears to have been to withhold them from the market until all back taxes were paid so that the new corporation could start off with some prospect of financial success. The order did not provide a specific period for payment of the taxes and carrying out of distribution. Obviously the court must have contemplated that a reasonable period would be necessary for the distribution after entry of the order authorizing it. Orderly procedure requires time for such distribution, and it surely cannot be thought that the court intended

that it would lose all control immediately upon entry of the order of distribution. Hence the only reasonable construction of the provision is that until such distribution was completed the court should retain jurisdiction as before. This, we think, is consistent with the express provision for reservation of jurisdiction for making any orders necessary to the consummation of the plan, and that during the time the shares were held by the permanent trustees they should vote them. If there is any conflict with other provisions of the order it is for the court to resolve that conflict, particularly in view of the fact that there was no appeal from the 1948 order authorizing continuation of the voting of all undistributed shares.

■ Appellants' dispute with the trustees of the Hartford Liquidation Trust is over the question whether the former were entitled to an order enjoining the latter from voting the 16,717 shares at the 1950 meeting, and a postponement of that meeting to enable appellants to submit to all the holders of beneficial certificates their offer to purchase such certificates. Appellants stated to the District Court that they had made an offer to the trustees to buy the entire block at $15 a share, with the privilege to the trustees to solicit higher bids, and that if the court would continue the meeting they would extend the time within which to submit the offer and would deposit any amount the court might fix to make it good. The trustees state that this offer was made to them on October 18, conditioned upon its acceptance or rejection by October 20. The record does not contain a copy of this offer hence we are unable to examine its scope and terms. Appellants in their petition stated that the offer was "without contingencies except the submission of the proposal to the holders of the trust units pursuant to the terms of the trust agreement." However, we find nothing in the terms of the trust agreement that can serve as a basis for the relief demanded.

■ Appellants rely on various cases in support of their proposition that the court has the power and duty to control the arbitrary action of the voting trustees. See, e. g., American United Mut. Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91; Altschuler v. Chicago City Bank and Trust Co., 380 Ill. 137, 43 N.E.2d 673; Martin v. McCune, 318 Ill. 585, 149 N.E. 489; Fischer v. Butz, 224 Ill. 379, 79 N.E. 659; First Nat. Bank v. Bryn Mawr Bldg. Corp., 365 Ill.409, 6 N.E.2d 654, 109 A.L.R. 1123; Humpa v. Hedstrom, 341 Ill.App. 605, 94 N.E.2d 614. Each of these cases was, of course, decided on the basis of its own particular facts. We find nothing in any of them that requires the action demanded by appellants under the facts presented by their appeal.

■ The law is well established that before a court is required to interfere with the action of trustees entrusted with a broad discretion under the terms of a trust agreement it must first find such action arbitrary. We do not believe the facts presented here compel such a finding. As stated in Altschuler v. Chicago City Bank and Trust Co., 380 Ill. 137, 142, 43 N.E.2d 673, 676, "The inherent power of a court of equity over trusts includes the power to remove a trustee for breach of trust, misconduct or disregard of fiduciary duties. * * * So long as a trustee is exercising discretionary powers conferred upon him, honestly and reasonably, a court of equity has no right to interfere, * * *" The duty of a court in this respect is discussed in Fischer v. Butz, 224 Ill. 379, 383, 79 N.E. 659, 661. "A court of equity will examine into the conduct of a trustee in the execution of his discretionary powers, and will assume control over the trustee's conduct, and, if need be, will take upon itself the execution of the trust. But the court will exercise this prerogative with great caution, and will not displace the trustee from exercising his functions unless, upon a consideration of the reasons and grounds upon which he has acted, it appears that he has abused his trust and that his acts in the premises have not been within the limits of a sound and honest execution of the trust." What we have here amounts in fact to no more than a

mere allegation by the holders of a minority interest in the trust that the trustees, in rejecting their summary demand to purchase the trust *res,* were guilty of a breach of their trust duties, or at least an abuse of their discretionary powers. We are not ready to say that such an allegation constitutes substantial evidence of arbitrary action on the part of the trustees sufficient to justify interference by the court.

Appellants also assert that it was the duty of the court to discharge the permanent trustees, enter a barring order, and to close the estate which had been pending since 1934. The court and all parties were in full accord as to this, and it appears now that proceedings are going forward in the District Court for the winding up of the original debtor proceeding in accordance with the requirements of the Act. Hence, although the order appealed from, in terms, denied appellants' prayer for the closing of the estate, in fact, machinery was forthwith set in motion calculated to bring about that result. Under these circumstances we find no abuse of discretion on the part of the court in denying appellants' petition. It follows that the orders of the District Court must be affirmed.

It is so ordered.